1
2
3
4
5
6
7
8
9

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DAIRIES INC., | 1:08-CV-00790 OWW GSA |
| Plaintiff, | ORDER RE DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (DOC. 26) |
| v. | |
| RSUI INDEMNITY CO., | |
| Defendant. | |

## I.   INTRODUCTION

This case concerns a directors and officers liability insurance policy ("the Policy") issued to Plaintiff, California Dairies, Inc. ("CDI"), by RSUI Indemnity Company ("RSUI"). RSUI denied coverage for claims asserted against CDI in a class action filed in Tulare County Superior Court, *Gonzalez v. CDI*, Case No. 08-226450 ("*Gonzalez*" or the "Underlying Action"), in which employees and former employees of CDI allege CDI violated various provisions of the California Labor Code ("CLC") concerning wages, hours, and related matters.

RSUI initially denied coverage based on three different exclusionary provisions. Upon the insured's request for

1

1  reconsideration, RSUI based the denial solely on Exclusion 4 of

2  the Policy, which excludes coverage for "violation of any of the

3  responsibilities, obligations or duties imposed by ... the Fair

4  Labor Standards Act ... or any similar provision of federal,

5  state or local statutory law or common law...."  CDI then filed

6  this action seeking declaratory relief regarding coverage under

7  the Policy.  The initial complaint was dismissed with leave to

8  amend.  Doc. 24, filed Mar. 20, 2009.  Plaintiffs filed a First

9  Amended Complaint ("FAC"), adding some new allegations,

10 particularly pertaining to the issues of waiver and the

11 applicability of Exclusion 7.  Doc. 25, filed Apr. 9, 2009.

12 Defendant again moves to dismiss.  Doc. 26.

13

14                      **II.   BACKGROUND**

15      A.   The Underlying *Gonzalez* Lawsuit.

16      On January 4, 2008, Walter Gonzalez filed a class action

17 complaint against CDI in Tulare County Superior Court.  FAC ¶7.

18 The *Gonzalez* Complaint alleges causes of action for:

19 1) failure to pay minimum wage; 2) failure to pay regular and

20 overtime wages; 3) failure to provide mandated meal periods or

21 pay an additional hour of wages; 4) failure to provide mandated

22 rest periods or pay an additional hour of wages; 5) failure to

23 reimburse employees for costs incurred to acquire and/or maintain

24 company-required uniforms; 6) knowing and intentional failure to

25 comply with itemized wage statement provisions; and 7) failure to

26 timely pay wages due at termination.  *Id*.  The *Gonzalez* Complaint

27 also alleges that CDI violated California's Unfair Competition

28 Law, Cal. Bus. Prof. Code § 17200, *et seq.*, as a result of CDI's

                              2

1 alleged violations of the CLC.  *Id*.  No violation of the federal

2 Fair Labor Standards Act ("FLSA") was alleged.  *See id.*

3

4        B.   <u>The Relevant Terms and Conditions of the Policy.</u>

5        CDI is the named Insured, as the "Insured Organization"

6 under the Policy.  FAC ¶5.  Under the Policy's Insuring Agreement

7 set forth at Section I(C), RSUI agrees:

8            **With the <u>Insured Organization</u> that if a <u>Claim</u> for a**
             **<u>Wrongful Act</u> is first made against the <u>Insured</u>**
9            **<u>Organization</u> during the Policy Period and reported in**
             **accordance with SECTION V. – CONDITIONS, C. Notice of**
10           **Claim and Circumstance of this policy, the <u>Insurer</u> will**
             **pay on behalf of the <u>Insured Organization</u> all <u>Loss</u> the**
11           **<u>Insured Organization</u> is legally obligated to pay.**

12 *See* Defendant's Request to Submit Evidence, Doc. 11, at p. 32 of

13 44 (underlined text is bold in original).[1]

14        The Policy does not contain a duty to defend, but instead

15 contains a duty to reimburse defense costs.  *Id*. at p. 11 of 44

16 (Advancement of Defense Expenses; Insurer Has No Duty to Defend).

17        "Insured" is defined at Section III(G) of the Policy as "any

18 Insured Organization and/or any Insured Person."  *Id*. at p. 34 of

19 44.  "Insured Organization" is defined as "the organization named

20 in Item 1 of the Declarations Page...."  *Id*. (Section III(H)).

21 "Insured Person" is "any past, present or future director,

22 officer, trustee, Employee, volunteer, or any committee member of

23

24        [1]   Although generally a district court may not consider

25 material beyond the pleadings on a Rule 12(b)(6) motion, a

26 document to which the complaint specifically refers may be
   considered if its authenticity is not questioned.  *Inlandboatmens*

27 *Union of Pac. v. Dutra Group.*, 279 F.3d 1075, 1083 (9th Cir.
   2002).  Here, as the authenticity of the Policy presented by

28 Defendants is not questioned, it may be considered.

a duly constituted committee of the Insured Organization."  *Id*.
(Section III(I)).  "Employee" is defined as "any past, present or
future employee of the Insured Organization...."  *Id*. (Section
II(D)).  "Employment Practices Claim" is "any Claim alleging an
Employment Practices Wrongful Act."  *Id*. at p. 33 of 44 (Section
II(E)).

An "Employment Practices Wrongful Act" is defined at Section
II(F) of the Policy as any actual or alleged:

> 1.   Wrongful dismissal, discharge or termination
> (either actual or constructive) of employment,
> including breach of an implied employment contract;
>
> 2.   Employment related harassment (including but not
> limited to sexual harassment);
>
> 3.   Employment-related discrimination (including but
> not limited to discrimination based on age, gender,
> race, color, national origin, religion, sexual
> orientation or preference, pregnancy or disability);
>
> 4.   Employment-related retaliation;
>
> 5.   Employment-related misrepresentation to an
> Employee or applicant for employment with the Insured
> organization;
>
> 6.   Libel, slander, humiliation, defamation or
> invasion of privacy (solely when employment related);
> 7.   Wrongful failure to promote;
>
> 8.   Wrongful deprivation of career opportunity,
> wrongful demotion or negligent Employee evaluation,
> including giving defamatory statements in connection
> with an Employee reference;
>
> 9.   Employment related wrongful discipline;
>
> 10.   Failure to grant tenure or practice privileges;
>
> 11.   Failure to provide or enforce adequate and
> consistent organization policies or procedures relating
> to employment;
>
> 12.   Violations of the following federal laws (as
> amended) including all regulations promulgated
> thereunder: a. Family and Medical leave Act of 1993; b.
> Americans with Disabilities Act of 1992 (ADA); c. Civil

4

Rights Act of 1991; d. Age Discrimination in Employment
Act of 1967 (ADEA), including the Older Workers Benefit
Protection Act of 1990; or e. Title VII of the Civil
Rights Law of 1964 (as amended) and 42 U.S.C. Section
1983, as well as the Pregnancy Discrimination Act of
1978;

13.  Violation of an Insured Person's civil rights
relating to any of the above; or

14.  Negligent hiring, retention, training or
supervision, infliction of emotional distress, failure
to provide or enforce adequate or consistent
organizational polices and procedures, or violation of
an individual's civil rights, when alleged in
conjunction with respect to any of the foregoing items
1 through 13.

*Id.*

C.  <u>The Relevant Exclusions of the Policy.</u>

The Policy also contains a number of specific exclusions,
two of which are at issue in this case.  The Policy provides that
the Insurer shall not be liable to make any payment for "Loss" in
connection with any "Claim" made against the "Insured":

4. For violation of any of the responsibilities,
obligations or duties imposed by the Employees
Retirement Income Security Act of 1974, *the Fair Labor
Standards Act* (except the Equal Pay Act), the National
Labor Relations Act, the Worker Adjustment and
Retraining Notification Act, the Consolidated Omnibus
Budget Reconciliation Act, the Occupational Safety &
Health Act, any rules or regulations of any of the
foregoing promulgated thereunder, and amendments
thereto *or any similar provision of federal, state or
local statutory law or common law*; provided this
EXCLUSION shall not apply to <u>Loss</u> arising from a <u>Claim</u>
for employment related retaliation.

***

7. Brought by or on behalf of any <u>Insured</u>,
except:...(b) an <u>Employment Practices Claim</u> brought by
an <u>Insured Person</u>..."

*Id.* at p. 35 of 44 (underlined words bolded in original; italic
emphasis added).  The Policy defines "Loss" at Section II(K) as

1  follows:

2      **Loss** means damages (including back pay and front pay),
        settlement, judgments (including pre- and post-judgment
3      interest on a covered judgment) and **Defense Expenses**.
        Loss (other than **Defense Expenses**) shall not
4      include:... 5. Any amounts owed as wages to any
        Employee, other than front pay or back pay; 6. Civil or
5      criminal fines or penalties.

6  *Id*. at p. 34 of 44 (underlined words bolded in original).

7

8      D.   <u>Tender of Claim and Response Thereto.</u>

9      On February 15, 2008, CDI tendered the *Gonzalez* action to

10  RSUI pursuant to the Policy.  FAC ¶13.  On March 3, 2008, RSUI

11  denied coverage, asserting three specific exclusionary

12  provisions.  FAC ¶14.  RSUI did not assert Exclusion 7 as a basis

13  to deny coverage.  *Id*.  On May 5, 2008, CDI requested that RSUI

14  reconsider its denial of the claim.  *Id*. at ¶15.  On May 14,

15  2008, RSUI conceded that two of the previously asserted

16  exclusionary provisions (grounds) would not apply, absent a final

17  and specific adjudication of certain conduct as against CDI.  FAC

18  ¶17.  The only exclusionary provision RSUI relied on to deny

19  coverage outright for the claim was Exclusion 4.  *Id*.

20

21      E.   <u>March 20, 2009 Dismissal With Leave to Amend.</u>

22      In response to Defendant's initial motion to dismiss, Doc.

23  10, the decision examined whether RSUI lawfully relied upon

24  Exclusion 4 to deny coverage, reasoning that Exclusion 4 bars any

25  claim based upon a CLC provision similar to those of the FLSA.

26  Doc. 24 at 11-24.  RSUI's motion to dismiss was granted without

27  leave to amend as to the first (failure to pay plaintiffs a

28  minimum wage as required under CLC §§ 1197, 1194 and 1194.2),

**6**

1  second (failure to pay regular and overtime wages in violation of

2  CLC §§ 200, 204, 500, 510, 512, and 1194, and section 3 of

3  Industrial Welfare Commission ("IWC") Wage Order 8), third and

4  fourth (failure to provide meal and rest periods or pay an

5  additional hour of wages based on CLC §§ 226.7 and 512, and

6  Section 11 of IWC Wage Order 8) causes of action in the *Gonzalez*

7  complaint.  *Id*. at 25-35.  RSUI's motion to dismiss was denied as

8  to the applicability of Exclusion 4 to the fifth (failure to

9  reimburse employees for costs incurred to acquire and/or maintain

10 company-required uniforms in violation of CLC § 2802 and Section

11 9 of Wage Order 8), sixth (failure to comply with the itemized

12 wage statement provisions contained in CLC §§ 226, 1174(d), and

13 1174.5, as well as Section 7 of Wage Order 8), and seventh

14 (failure to pay wages due at termination, a claim founded upon

15 CLC §§ 201, 202, and 203) causes of action in the *Gonzalez*

16 complaint.  *Id*. at 35-39.

17       As to the applicability of Exclusion 7, CDI's argument was

18 rejected that RSUI should be estopped from asserting Exclusion 7

19 to deny coverage, because Exclusion 7 was not mentioned in the

20 insurer's final denial of coverage letter.  To demonstrate

21 estoppel:

22            "(1) [T]he party to be estopped must know the facts;
            (2) he must intend that his conduct shall be acted
23            upon, or must so act that the party asserting the
            estoppel had the right to believe that it was so
24            intended; (3) the party asserting the estoppel must be
            ignorant of the true state of facts; and, (4) he must
25            rely upon the conduct to his injury".  *Spray, Gould &
            Bowers v. Assoc. Intern. Ins. Co.,* 71 Cal. App. 4th
26            1260, 1262 (1990).  Application of estoppel in the
            insurance context typically arises from some
27            affirmative, misleading conduct on the part of the
            insurer.  *Spray,* 71 Cal. App. 4th at 1268.  Absent such
28            affirmative conduct, estoppel may arise from silence

                                  7

> when the party has a duty to speak, such as where a legal obligation requires disclosure.  *Id.*

*Id.* at 40.

Although CDI alleged that RSUI violated California's Fair Claims Practices Regulations by failing to articulate all bases for denial of coverage in the final denial letter, *id.* at 40-42, this did not establish estoppel, as it only establishes RSUI's failure to disclose:

> To establish estoppel, CDI must also demonstrate that it reasonably relied to its detriment on the assertions RSUI made in its final denial of coverage.  The Complaint contains no relevant allegations, and RSUI argues that CDI cannot allege reasonable detrimental reliance because RSUI denied coverage from the outset on alternative grounds.

*Id.* at 42.  CDI requested, and was granted, an opportunity to amend its complaint, to "consistent with Federal Rule of Civil Procedure 11, allege the remaining elements of estoppel."  *Id.* At oral argument CDI's counsel acknowledged it was not pursuing an estoppel theory.

A footnote also addressed CDI's alternative argument that RSUI's failure to assert Exclusion 7 in its final denial of coverage decision constitutes a waiver of its rights to do so in this litigation:

> To demonstrate waiver, the insured bears the burden of proof to demonstrate that the carrier intentionally relinquished a right or that the carrier's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.  *Waller v. Truck Insurance Exchange, Inc.*, 11 Cal.4th 1, 33-34 (1995).  The *Waller* Court held:
>
> > holding that an insurer waives defenses not asserted in its initial denial of a duty to defend would be inconsistent with established waiver principles by erroneously implying an intent to relinquish contract rights where no such intent

8

existed.  Such a conclusion would contradict the
holdings of the majority of California and
sister-state cases addressing the waiver issue.

*Id*. at 33.  CDI fails to explain how its waiver theory
can be reconciled with the holding in *Waller*.

*Id*. at 42-43 n.3.  Additionally, anti-waiver language is included

in the original letter.  Doc. 26-2, Ex. B, at 3.

In the absence of estoppel or waiver, CDI's argument was

rejected that the allegations in the *Gonzalez* complaint

concerning denial of mandated meal periods, rest periods,

reimbursement for employee uniforms, and wages due at

termination, involve "Employment Practices Wrongful Acts" because

they "reflect employment misrepresentations to employees that

Plaintiff would comply with the law regarding such benefits,"

and/or "involve a failure to enforce adequate or consistent

organizational polices relating to employment."  *Id*. at 45.

CDI's assertion that the CLC violations alleged in the
*Gonzalez* complaint should be viewed as "employment-
related misrepresentations" is a strained
interpretation of the Policy language in light of the
facts presented.  The *Gonzalez* action is limited to
allegations based upon the failure to pay wages and
related benefits.  The *Gonzalez* complaint does not
allege any misrepresentations by CDI, nor is
misrepresentation a required element of any of the
Gonzalez causes of action, all of which relate to wage
and hour conditions of employment.

The same conclusion applies to CDI's argument that the
*Gonzalez* allegations involve failures "to enforce
adequate or consistent organization[al] polices
relating to employment."  The underlying complaint does
not mention or concern internal organizational policies
at CDI.  CDI's interpretation of this language in the
exception to Exclusion 7 is without limitation, as the
Exclusion 7 exception would be triggered for any claims
brought by employees against CDI, because any allegedly
wrongful act by an employer vis-a-vis an employee could
be the subject of an internal organizational policy.
This is not what the Policy intended, or it would have
included a blanket exception from Exclusion 7 for
claims brought by Employees against an Insured.

9

> The *Gonzalez* Complaint contains no allegations related to any misrepresentations, failures to provide and/or enforce company rules, negligence, or civil rights violations.  The exception for "Employment Practices Wrongful Acts" provided under Exclusion 7 does not here apply.  Accordingly, Exclusion 7 bars coverage for all of the CLC claims in the *Gonzalez* lawsuit, as they are between Insureds and do not qualify as "Employment Practices Wrongful Acts."

*Id.* at 45-46.  RSUI's motion to dismiss based on the application of Exclusion 7 was granted with leave to amend.

Finally, the eighth cause of action in *Gonzalez*, which alleges that CDI violated the Unfair Competition Law ("UCL") as a result of the failure to comply with various provisions of the CLC, was dismissed with leave to amend.  *Id.* at 47-48.  Because the UCL "borrows" violations from other laws by making them independently actionable as unfair competitive practices, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003), any "Loss" under the UCL would "necessarily result from any underlying CLC violations."  As RSUI was absolved of the responsibility to provide coverage for the other causes of action in the *Gonzalez* lawsuit, no UCL claim could exist.  *Id.*


### III.   STANDARD OF DECISION

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (May 18, 2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S.

10

544, 570 (2007)).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. 556-57). Dismissal also can be based on the lack of a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In deciding whether to grant a motion to dismiss, the court "accept [s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).

## IV.   ANALYSIS

### A.   Equitable Estoppel.

In response to Defendant's first motion to dismiss, CDI's argued that RSUI should be estopped from asserting Exclusion 7 as a basis for denying coverage, because Exclusion 7 was not mentioned in the insurer's final denial of coverage letter. To demonstrate estoppel:

> "(1) [T]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury". *Spray, Gould & Bowers v. Assoc. Intern. Ins. Co.*, 71 Cal. App. 4th 1260, 1262 (1990). Application of estoppel in the insurance context typically arises from some

11

> affirmative, misleading conduct on the part of the insurer. *Spray,* 71 Cal. App. 4th at 1268.  Absent such affirmative conduct, estoppel may arise from silence when the party has a duty to speak, such as where a legal obligation requires disclosure.  *Id.*

Doc. 24 at 40.  CDI's allegations that RSUI violated California's Fair Claims Practices Regulations by failing to articulate all bases for denial of coverage in the final denial letter, *id*. at 40-42, are legally insufficient to establish estoppel:

> To establish estoppel, CDI must also demonstrate that it reasonably relied to its detriment on the assertions RSUI made in its final denial of coverage.  The Complaint contains no relevant allegations, and RSUI argues that CDI cannot allege reasonable detrimental reliance because RSUI denied coverage from the outset on alternative grounds.

*Id*. at 42.  CDI requested, and was granted leave to amend its complaint, to, "consistent with Federal Rule of Civil Procedure 11, allege the remaining elements of estoppel."  *Id*.  Plaintiff's counsel concedes that no estoppel-related allegations are contained in the FAC.  Defendants are not estopped from advancing Exclusion 7 as a defense to coverage.

### B.   Implied waiver.

The FAC contains new allegations that Defendant impliedly waived its right to rely on Exclusion 7.  Defendant maintains that this defense fails as a matter of law.

Waiver exists when:

> To demonstrate waiver, the insured bears the burden of proof to demonstrate <u>that the carrier intentionally relinquished a right or that the carrier's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished</u>.  *Waller v. Truck Insurance Exchange, Inc.*, 11 Cal. 4th 1, 33-34 (1995)[:]

12

> holding that an insurer waives defenses not
> asserted in its initial denial of a duty to defend
> would be inconsistent with established waiver
> principles by erroneously implying an intent to
> relinquish contract rights where no such intent
> existed.  Such a conclusion would contradict the
> holdings of the majority of California and
> sister-state cases addressing the waiver issue.

*Id*. at 33.

Doc. 24 at 42-43 n.3 (emphasis added).[2]  The cases cited by CDI
articulate the doctrine in similar terms.  *See* Doc. 32 at 5
(citing, e.g., *Ins. Co. of the West v. Haralambos Beverage Co.*,
195 Cal. App. 3d 1308, 1321 (1987), overruled on other grounds,
*Vandenberg v. Superior Court*, 21 Cal. 4th 815 (1999)).

CDI's implied waiver argument relies heavily, if not
exclusively, on the California Fair Claim Practices Regulations
("CFCPRs"), 10 Cal. Code Regs. § 2695.1 *et seq*.  10 Cal. Code
Regs. § 2695.7(b)(1) provides:

> Where an insurer denies or rejects a first party claim
> in whole or in part, it shall do so in writing and
> shall provide to the claimant a statement <u>listing all
> basis for such rejection or denial and the factual and
> legal basis for each reason given for such rejection or
> denial</u> which is then within the insurer's knowledge.

---

[2]   CDI suggests that any reliance on *Waller* is misplaced,
because the insured in *Waller* did not argue implied waiver.  Doc.
32 at 8-9.  CDI is incorrect that *Waller's* general articulation
of the requirements for an implied waiver is dicta.  Whether an
insured impliedly waived grounds not advanced in its denial
letter was squarely at issue in *Waller*.  *See* 11 Cal. 4th at 31-
32.  CDI also complains that the insured in *Waller* did not argue
that waiver arose as a result of the insurer's failure to comply
with California's Fair Claim Practices Regulations ("CFCPRs").
Although the CFCPRs were not raised in *Waller*, this does not
undermine *Waller's* articulation of the general rule "that waiver
requires the insurer to intentionally relinquish its right to
deny coverage and that denial of coverage on one ground does not,
absent clear and convincing evidence to suggest otherwise,
impliedly waive grounds not stated in the denial."  *Id*. at 31.

> Where an insurer's denial of a first party claim, in
> whole or in part, is based on a specific policy
> provision, condition or exclusion, the written denial
> shall include reference thereto and provide an
> explanation of the application of the provision,
> condition or exclusion to the claim. Every insurer that
> denies or rejects a third party claim in whole or in
> part, or disputes liability or damages shall do so in
> writing.

(emphasis added).  Here, it is alleged that RSUI failed to

include Exclusion 7 in its final denial letter.  FAC at ¶23.

Assuming the truth of the allegations in the FAC, it must be

accepted for purposes of this motion that Defendant did not

comply with the CFCPRs, which impose upon an Insurer a duty to

articulate all bases for denying coverage in writing.  The issue

is whether, under the facts alleged, violating[3] the CFCPRs

constitutes an implied waiver of any bases for denial of coverage

not articulated in writing to the insured?

CDI first cites a series of cases that stand for the

unremarkable proposition that an insurer's violation of the

CFCPRs is evidence that the insurer breached its duties to the

insured.  For example, *Shade Foods, Inc. v. Innovative Products

Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 916 (2000), held

that a violation of California Insurance Code § 790.03, which is

the statute implemented by the CFCPRs, "may evidence the

---

[3]     The CFCPRs promulgated "certain minimum standards for
the settlement of claims which when knowingly violated on a
single occasion or performed with such frequency as to indicate a
general practice [] constitute[s] an unfair claims settlement
practice...."  10 Cal. Code Regs. §2695.1(a)(1).  An insurer
violates the CFCPRs whenever it "knowingly" commits an act which
breaches one of the regulations. "Knowingly committed" means
"performed with actual, implied or constructive knowledge,
including but not limited to, that which is implied by operation
of law."  10 Cal. Code Regs. § 2695.2(1).

insurer's breach of its duty to its insured and any implied covenant of good faith and fair dealing...." *See also Rattan v. United Services Auto Assoc.*, 84 Cal. App. 4th 715, 723-24 (2000) (holding that a violation of the CFCPRs "may be used by a jury to infer a lack of reasonableness by the insurer"). But, this does not necessarily mean a CFCPR violation constitutes a <u>waiver</u> of those grounds not articulated as required by the regulations.

CDI next cites *Spray, Gould & Bowers v. Associated International Insurance Co.*, 71 Cal. App. 4th 1260 (1999), in which the insured sued his business interruption insurer for breach of contract, bad faith and declaratory relief after the insurer denied coverage for an earthquake loss that occurred two years earlier. *Id*. at 1264. The trial court granted summary judgment in favor of the insurer, based on the one year statute of limitation period set forth in the policy, rejecting the insured's argument that the insurer should not be entitled to rely on the statute of limitations defense because the insurer failed to properly notify the insured of this limitation, as the insurer was required to do under the applicable CFCPR. *Id*. at 1264-65.

The Court of Appeal reversed, holding that an insurer's direct violation of regulations issued by the California Insurance Commissioner may provide a basis for asserting <u>estoppel</u> against an insurer's assertion of a contact limitation defense. *Id*. at 1268-69. The Court of Appeals reasoned that "mere silence will not create an estoppel, unless there is a duty to speak," and found that the CFCPRs impose such a duty:

> The regulation imposes on insurers an unmistakable duty to advise its claimant insureds of applicable claim time limits....

*Id.* at 1269.  *Spray* also reiterated that to establish equitable estoppel, the insured must establish more than the existence of a the duty to speak and the failure to comply with that duty:

> Four elements must ordinarily be proved to establish an equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury.

*Id.* at 1268 (internal quotations and citations omitted).

As discussed above, CDI has not alleged ignorance and/or detrimental reliance.  Although *Spray* supports the application of equitable estoppel where all four elements are present, it does not support the existence of a per se waiver whenever the CFCPRs are violated.  CDI provides no legal support for its assertion that an insured's failure to assert a particular defense results in a waiver, absent establishment of all the other elements of equitable estoppel.

Finally, CDI argues that its allegations satisfy the implied waiver standard articulated in *Waller*, which requires conduct "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished."  The FAC alleges:

> 18. At the time RSUI made its final decision to deny coverage it was aware that, with respect to the handling and adjustment of claims in the state of California, it was obligated to comply with the mandatory provisions of the California Fair Claim Practices and Settlement Act, 10 C.C.R. §2695.1, et seq.

16

19. Upon information and belief, CALIFORNIA DAIRIES alleges that at the time RSUI made its final decision to deny coverage, it was aware that the California Fair Claims and Settlement Practices Regulations, specifically 10 C.C.R. §2695.7(b)(1) required RSUI to set forth in writing to CALIFORNIA DAIRIES a statement listing all bases for such denial, which would include reference to any and all potentially applicable coverage provisions of its policy.

20. Upon information and belief, CALIFORNIA DAIRIES alleges that at the time RSUI made its final decision to deny coverage, it was aware that under 10 C.C.R. §2695.6(b), it was required to provide thorough and adequate training regarding the California Fair Claims and Settlement Practices Regulations to its agents involved with the handling and adjustment of claims so that they would be fully and completely familiar with all provisions of the regulations.

21. Upon information and belief, CALIFORNIA DAIRIES alleges that because of the mandatory provisions provided by the California Fair Claims and Settlement Practices Regulations, RSUI trained its representatives involved with the handling and adjusting of claims, that the failure to set forth specifically all coverage provisions potentially applicable as a basis for denying coverage, in the written denial letter mandated by the California Insurance Regulations, would and could constitute a waiver of RSUI's right to subsequently assert additional coverage provisions as a basis to deny coverage.

22. Upon information and belief, CALIFORNIA DAIRIES alleges that based on the mandatory provisions of the California Insurance Regulations, RSUI trained its representatives involved with the handling and adjustment of insurance claims, that it would be inconsistent with RSUI's understanding of the regulations and RSUI's rights, for RSUI to attempt to assert a denial of coverage on a basis which RSUI knew or should have known at the time it issued its final written denial letter, but which RSUI failed to assert or identify at the time it issued its final written denial letter.

Assuming, *arguendo*, the truth of these allegations, if RSUI trained its representatives that failure to include all potentially applicable coverage provisions in a denial letter could constitute a waiver of RSUI's right to subsequently assert any omitted bases for denying coverage, RSUI's failure to include

17

Exclusion 7 in the final denial letter arguably constitutes conduct "so inconsistent with an intent to enforce" Exclusion 7 so as to "induce a reasonable belief that such right has been relinquished."

RSUI rejoins that CDI could not have reasonably believed that RSUI intended to relinquish its right to assert Exclusion 7 because the denial letter specifically states that "nothing in this letter nor any action taken by us in connection with this matter should be construed as an admission of coverage or waiver of any right RSUI might have at law or under the policy." *See* Doc. 26-2, Ex. B, at 3.

"Whether there has been a waiver is usually regarded as a question of fact to be determined by the jury...." *Old Republic Ins. Co v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 679 (2000). In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party. *TwoRivers,* 174 F.3d at 991. RSUI is correct that a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Here, however, it is not unreasonable to infer from the allegations of the FAC that a waiver occurred. Although the allegations are not particularly robust, as they are on information and belief, the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949.

18

Defendants' motion to dismiss the claim for coverage based on waiver is DENIED.


C.   **Employment Practices Wrongful Acts.**

CDI revisits the prior ruling on Exclusion 7's applicability.  CDI's previous argument was rejected that the allegations in the *Gonzalez* complaint concerning denial of mandated meal periods, rest periods, reimbursement for employee uniforms, and wages due at termination, involve "Employment Practices Wrongful Acts" because they "reflect employment misrepresentations to employees that Plaintiff would comply with the law regarding such benefits," and/or "involve a failure to enforce adequate or consistent organizational polices relating to employment."  *Id*. at 45.

> CDI's assertion that the CLC violations alleged in the *Gonzalez* complaint should be viewed as "employment-related misrepresentations" is a strained interpretation of the Policy language in light of the facts presented.  The *Gonzalez* action is limited to allegations based upon the failure to pay wages and related benefits.  The *Gonzalez* complaint does not allege any misrepresentations by CDI, nor is misrepresentation a required element of any of the Gonzalez causes of action, all of which relate to wage and hour conditions of employment.

> The same conclusion applies to CDI's argument that the *Gonzalez* allegations involve failures "to enforce adequate or consistent organization[al] polices relating to employment."  The underlying complaint does not mention or concern internal organizational policies at CDI.  CDI's interpretation of this language in the exception to Exclusion 7 is without limitation, as the Exclusion 7 exception would be triggered for any claims brought by employees against CDI, because any allegedly wrongful act by an employer vis-a-vis an employee <u>could</u> be the subject of an internal organizational policy.  This is not what the Policy intended, or it would have included a blanket exception from Exclusion 7 for claims brought by Employees against an Insured.

19

> The *Gonzalez* Complaint contains no allegations related to any misrepresentations, failures to provide and/or enforce company rules, negligence, or civil rights violations.  The exception for "Employment Practices Wrongful Acts" provided under Exclusion 7 does not here apply.  Accordingly, Exclusion 7 bars coverage for all of the CLC claims in the *Gonzalez* lawsuit, as they are between Insureds and do not qualify as "Employment Practices Wrongful Acts."

*Id*. at 45-46.  The basis for this ruling was the complete lack of evidence that RSUI ever made any such "misrepresentations" or that it had any such company rules.

CDI now argues that the Policy provides a "blanket exception to Exclusion 7 for claims brought by employees against Plaintiff."  Doc. 32 at 10.  CDI misreads the Policy language, which provides, at Exclusion 7, that the Insurer shall not be liable to make any payment for "Loss" in connection with any "Claim" made against the "Insured":

> 7. Brought by or on behalf of any <u>Insured</u>, except:...(b) an <u>Employment Practices Claim</u> brought by an <u>Insured Person</u>..."

This is a blanket <u>exclusion</u> for claims brought "by or on behalf of any Insured," which includes present and former employees, <u>unless</u> the claim is an "Employment Practices Claim," a term of art that is specifically defined as "any Claim alleging an Employment Practices Wrongful Act."  *Id*. at p. 33 of 44 (Section II(E)).  An "Employment Practices Wrongful Act" is defined at Section II(F) of the Policy as any actual or alleged:

> 1.   Wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied employment contract;
>
> 2.   Employment related harassment (including but not limited to sexual harassment);
>
> 3.   Employment-related discrimination (including but not limited to discrimination based on age, gender,

20

race, color, national origin, religion, sexual
orientation or preference, pregnancy or disability);

4.   Employment-related retaliation;

5.   Employment-related misrepresentation to an
Employee or applicant for employment with the Insured
organization;

6.   Libel, slander, humiliation, defamation or
invasion of privacy (solely when employment related);
7.   Wrongful failure to promote;

8.   Wrongful deprivation of career opportunity,
wrongful demotion or negligent Employee evaluation,
including giving defamatory statements in connection
with an Employee reference;

9.   Employment related wrongful discipline;

10.  Failure to grant tenure or practice privileges;

11.  Failure to provide or enforce adequate and
consistent organization policies or procedures relating
to employment;

12.  Violations of the following federal laws (as
amended) including all regulations promulgated
thereunder: a. Family and Medical leave Act of 1993; b.
Americans with Disabilities Act of 1992 (ADA); c. Civil
Rights Act of 1991; d. Age Discrimination in Employment
Act of 1967 (ADEA), including the Older Workers Benefit
Protection Act of 1990; or e. Title VII of the Civil
Rights Law of 1964 (as amended) and 42 U.S.C. Section
1983, as well as the Pregnancy Discrimination Act of
1978;

13.  Violation of an Insured Person's civil rights
relating to any of the above; or

14.  Negligent hiring, retention, training or
supervision, infliction of emotional distress, failure
to provide or enforce adequate or consistent
organizational polices and procedures, or violation of
an individual's civil rights, when alleged in
conjunction with respect to any of the foregoing items
1 through 13.

*Id.* A claim brought by an Insured employee against an Insured

employer is only covered by the Policy if that claim falls within

the definition of an Employment Practices Wrongful Act.

CDI also revisits the prior ruling on the application of the

21

Employment Practices Wrongful Act definitions.  First, CDI suggests that "if it is determined that [CDI] is liable to plaintiffs in the underlying action, it will necessarily result from the situation of the employees not being paid in accordance with standard company policies and procedures relating to the employment of the individual," thereby triggering Section II(F)(14), which provides coverage for claims of "failure to provide or enforce adequate or consistent organizational polices and procedures ... when alleged in conjunction with respect to any of the foregoing items 1 through 13."  This argument was directly addressed and rejected by the March 20, 2009 Decision:

> The underlying complaint does not mention or concern internal organizational policies at CDI.  CDI's interpretation of this language in the exception to Exclusion 7 is without limitation, as the Exclusion 7 exception would be triggered for any claims brought by employees against CDI, because any allegedly wrongful act by an employer vis-a-vis an employee <u>could</u> be the subject of an internal organizational policy.  This is not what the Policy intended, or it would have included a blanket exception from Exclusion 7 for claims brought by Employees against an Insured.

Doc. 26 at 46.  CDI alleges no new facts or authorities that warrant reconsideration of this ruling.

   The FAC also alleges:

> Plaintiff GONZALEZ was hired pursuant to an employment contract promising, implicitly or explicitly, pay in conformance with the terms of the contract and California wage and hour requirements.

FAC ¶9.  CDI alleges that by virtue of this allegation, the Underlying Action should be deemed to "include allegations that [CDI] made misrepresentations to its employees relating to the terms, conditions and circumstances of their employment with [CDI]," FAC ¶10, thereby triggering Section II(F)(5) of the

policy, which requires coverage for actions based upon "[e]mployment-related misrepresentation to an Employee or applicant for employment with the Insured organization." This argument was also rejected by the March 20, 2009 Decision:

> CDI's assertion that the CLC violations alleged in the *Gonzalez* complaint should be viewed as "employment-related misrepresentations" is a strained interpretation of the Policy language in light of the facts presented. The *Gonzalez* action is limited to allegations based upon the failure to pay wages and related benefits. The *Gonzalez* complaint does not allege any misrepresentations by CDI, nor is misrepresentation a required element of any of the Gonzalez causes of action, all of which relate to wage and hour conditions of employment.

> ***

> The *Gonzalez* Complaint contains no allegations related to any misrepresentations, failures to provide and/or enforce company rules, negligence, or civil rights violations. The exception for "Employment Practices Wrongful Acts" provided under Exclusion 7 does not here apply. Accordingly, Exclusion 7 bars coverage for all of the CLC claims in the *Gonzalez* lawsuit, as they are between Insureds and do not qualify as "Employment Practices Wrongful Acts.

Doc. 24 at 45-46. As to Employment Practices Wrongful Act No. 5, the misrepresentation must be specific and it must be made to an existing or prospective employee. Federal Rule of Civil Procedure 9(b) requires allegations specifically describing the allege misrepresentation(s), and when, by, and to whom it was made. After an opportunity to amend, Plaintiff has not alleged a particular or sufficient misrepresentation to an existing or prospective employee. Nothing in the FAC or CDI's opposition justifies a different conclusion here. The mention in the Underlying Complaint of the existence of employment contracts does not transform the causes of action in the underlying complaint into ones arising out of an employment-related

1  misrepresentation.

2        Defendants motion to dismiss the assertions of Employment

3  Practices Wrongful Act exceptions No. 5 and 14 to avoid the

4  applicability of Exclusion 7 is GRANTED.

5

6                           V.   CONCLUSION

7        For the reasons set forth above, Defendant's motion to

8  dismiss is GRANTED IN PART AND DENIED IN PART.  Exclusion 7

9  applies to bar coverage for all of the claims in the Underlying

10 Action.  Nothing in the First Amended Complaint warrants

11 reconsideration of that ruling.  Similarly, Plaintiff has failed

12 to allege the elements of estoppel.  However, Plaintiff has

13 sufficiently alleged that RSUI, by failing to mention Exclusion 7

14 in its final denial letter, may have waived its right to assert

15 Exclusion 7 to deny coverage in this case.  This claim alone

16 survives.

17       Defendant shall submit a form of order consistent with this

18 memorandum decision within five (5) days of electronic service.

19

20 SO ORDERED

21 Dated: August 11, 2009

22                              /s/ Oliver W. Wanger
                               Oliver W. Wanger
23                           United States District Judge

24

25

26

27

28

                                24