1
2
3
4
5

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| CALIFORNIA DAIRIES, INC., | 1:08-CV-00790 OWW DLB |
|---|---|
| Plaintiff, | MEMORANDUM DECISION DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 40), AND SETTING FURTHER STATUS CONFERENCE FOR 4/29/10 AT 8:15 A.M. |
| v. | |
| RSUI INDEMNITY COMPANY, | |
| Defendant. | |

## I. INTRODUCTION

This case concerns a directors and officers liability insurance policy ("the Policy") issued to Plaintiff, California Dairies, Inc. ("CDI"), by RSUI Indemnity Company ("RSUI"). RSUI denied coverage for claims asserted against CDI in a class action filed in Tulare County Superior Court, *Gonzalez v. CDI*, Case No. 08-226450 ("*Gonzalez*" or the "Underlying Action"), in which employees and former employees of CDI allege CDI violated various provisions of the California Labor Code ("CLC") concerning wages, hours, and related matters.

RSUI initially denied coverage based on three different exclusionary provisions. Upon the insured's request for reconsideration, RSUI based the denial solely on Exclusion 4 of the Policy, which excludes coverage for "violation of any of the

1

responsibilities, obligations or duties imposed by ... the Fair Labor Standards Act ... or any similar provision of federal, state or local statutory law or common law...."  CDI then filed this action seeking declaratory relief regarding coverage under the Policy.  The initial complaint was dismissed with leave to amend.  Doc. 24, filed Mar. 20, 2009.  Plaintiffs filed a First Amended Complaint ("FAC"), adding some new allegations, particularly pertaining to the issues of waiver and the applicability of Exclusion 7.  Doc. 25, filed Apr. 9, 2009. Defendants' renewed motion to dismiss the FAC was granted in part and denied in part.  Doc. 36.

RSUI now moves for judgment on the pleadings, asserting that a waiver theory cannot create coverage "where none exists."  Doc. 40 at 3.  CDI opposes the motion.  Doc. 42.  RSUI replied.  Doc. 49.  The motion was heard March 22, 2010.

## II. BACKGROUND

A.    The Underlying Gonzalez Lawsuit.

On January 4, 2008, Walter Gonzalez filed a class action complaint against CDI in Tulare County Superior Court.  FAC ¶7. The *Gonzalez* Complaint alleges causes of action for:  1) failure to pay minimum wage; 2) failure to pay regular and overtime wages; 3) failure to provide mandated meal periods or pay an additional hour of wages; 4) failure to provide mandated rest periods or pay an additional hour of wages; 5) failure to

reimburse employees for costs incurred to acquire and/or maintain company-required uniforms; 6) knowing and intentional failure to comply with itemized wage statement provisions; and 7) failure to timely pay wages due at termination.  *Id*.  The *Gonzalez* Complaint also alleges that CDI violated California's Unfair Competition Law, Cal. Bus. Prof. Code § 17200, *et seq.*, as a result of CDI's alleged violations of the CLC.  *Id*.  No violation of the federal Fair Labor Standards Act ("FLSA") was alleged.  *See id.*

B.   <u>The Relevant Terms and Conditions of the Policy.</u>

CDI is the named Insured, as the "Insured Organization" under the Policy.  FAC ¶5.  Under the Policy's Insuring Agreement set forth at Section I(C), RSUI agrees:

> With the <u>Insured Organization</u> that if a <u>Claim</u> for a <u>Wrongful Act</u> is first made against the <u>Insured Organization</u> during the Policy Period and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim and Circumstance of this policy, the <u>Insurer</u> will pay on behalf of the <u>Insured Organization</u> all <u>Loss</u> the <u>Insured Organization</u> is legally obligated to pay.

*See* Defendant's Request to Submit Evidence, Doc. 11, at p. 32 of 44 (underlined text is bold in original).

The Policy does not contain a duty to defend, but instead contains a duty to reimburse defense costs.  *Id*. at p. 11 of 44 (Advancement of Defense Expenses; Insurer Has No Duty to Defend).

"Insured" is defined at Section III(G) of the Policy as "any Insured Organization and/or any Insured Person."  *Id*. at p. 34 of 44.  "Insured Organization" is defined as "the organization named in Item 1 of the Declarations Page...."  *Id*. (Section III(H)).

3

"Insured Person" is "any past, present or future director, officer, trustee, Employee, volunteer, or any committee member of a duly constituted committee of the Insured Organization."  *Id*. (Section III(I)).  "Employee" is defined as "any past, present or future employee of the Insured Organization...."  *Id*. (Section II(D)).  "Employment Practices Claim" is "any Claim alleging an Employment Practices Wrongful Act."  *Id*. at p. 33 of 44 (Section II(E)).

An "Employment Practices Wrongful Act" is defined at Section II(F) of the Policy as any actual or alleged:

> 1.   Wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied employment contract;
>
> 2.   Employment related harassment (including but not limited to sexual harassment);
>
> 3.   Employment-related discrimination (including but not limited to discrimination based on age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);
>
> 4.   Employment-related retaliation;
>
> 5.   Employment-related misrepresentation to an Employee or applicant for employment with the Insured organization;
>
> 6.   Libel, slander, humiliation, defamation or invasion of privacy (solely when employment related);
>
> 7.   Wrongful failure to promote;
>
> 8.   Wrongful deprivation of career opportunity, wrongful demotion or negligent Employee evaluation, including giving defamatory statements in connection with an Employee reference;
>
> 9.   Employment related wrongful discipline;
>
> 10.  Failure to grant tenure or practice privileges;

4

11.  Failure to provide or enforce adequate and consistent organization policies or procedures relating to employment;

12.  Violations of the following federal laws (as amended) including all regulations promulgated thereunder: a. Family and Medical leave Act of 1993; b. Americans with Disabilities Act of 1992 (ADA); c. Civil Rights Act of 1991; d. Age Discrimination in Employment Act of 1967 (ADEA), including the Older Workers Benefit Protection Act of 1990; or e. Title VII of the Civil Rights Law of 1964 (as amended) and 42 U.S.C. Section 1983, as well as the Pregnancy Discrimination Act of 1978;

13.  Violation of an Insured Person's civil rights relating to any of the above; or

14.  Negligent hiring, retention, training or supervision, infliction of emotional distress, failure to provide or enforce adequate or consistent organizational polices and procedures, or violation of an individual's civil rights, when alleged in conjunction with respect to any of the foregoing items 1 through 13.

*Id.*

C.   The Relevant Exclusions of the Policy.

The Policy also contains a number of specific exclusions, two of which are at issue in this case.  The Policy provides that the Insurer shall not be liable to make any payment for "Loss" in connection with any "Claim" made against the "Insured":

4. For violation of any of the responsibilities, obligations or duties imposed by the Employees Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety & Health Act, any rules or regulations of any of the foregoing promulgated thereunder, and amendments thereto or any similar provision of federal, state or local statutory law or common law; provided this EXCLUSION shall not apply to Loss arising from a Claim for employment related retaliation.

***

5

> 7. Brought by or on behalf of any Insured,
> except:...(b) an Employment Practices Claim brought by
> an Insured Person..."

*Id*. at p. 35 of 44 (underlined words bolded in original; italic

emphasis added).  The Policy defines "Loss" at Section II(K) as

follows:

> <u>Loss</u> means damages (including back pay and front pay),
> settlement, judgments (including pre- and post-judgment
> interest on a covered judgment) and <u>Defense Expenses</u>.
> Loss (other than <u>Defense Expenses</u>) shall not
> include:... 5. Any amounts owed as wages to any
> Employee, other than front pay or back pay; 6. Civil or
> criminal fines or penalties.

*Id*. at p. 34 of 44 (underlined words bolded in original).  This

makes the insurance contract a "burning limits" policy.

D.   <u>Tender of Claim and Response Thereto.</u>

On February 15, 2008, CDI tendered the Gonzalez action to

RSUI pursuant to the Policy.  FAC ¶13.  On March 3, 2008, RSUI

denied coverage, asserting three specific exclusionary

provisions.  *Id*. at ¶14.  RSUI did not assert Exclusion 7 as a

basis to deny coverage.  *Id*.  On May 5, 2008, CDI requested that

RSUI reconsider its denial of the claim.  *Id*. at ¶15.  On May 14,

2008, RSUI conceded that two of the previously asserted

exclusionary provisions (grounds) would not apply, absent a final

and specific adjudication of certain conduct as against CDI.  *Id*.

at ¶17.  The only exclusionary provision RSUI relied on to deny

coverage outright for the claim was Exclusion 4.  *Id*.

**E.    March 20, 2009 Dismissal With Leave to Amend.**

On September 2, 2008, Defendant moved to dismiss the initial complaint.  Doc. 10.  A March 20, 2009 Decision concluded that Exclusion 4 bars any claim based upon a CLC provision similar to those of the FLSA.  Doc. 24 at 11-24.  RSUI's motion to dismiss was granted without leave to amend as to the first (failure to pay plaintiffs a minimum wage as required under CLC §§ 1197, 1194 and 1194.2), second (failure to pay regular and overtime wages in violation of CLC §§ 200, 204, 500, 510, 512, and 1194, and section 3 of Industrial Welfare Commission ("IWC") Wage Order 8), third and fourth (failure to provide meal and rest periods or pay an additional hour of wages based on CLC §§ 226.7 and 512, and Section 11 of IWC Wage Order 8) causes of action in the Gonzalez complaint.  *Id*. at 25-35.  RSUI's motion to dismiss was denied as to the applicability of Exclusion 4 to the fifth (failure to reimburse employees for costs incurred to acquire and/or maintain company-required uniforms in violation of CLC § 2802 and Section 9 of Wage Order 8), sixth (failure to comply with the itemized wage statement provisions contained in CLC §§ 226, 1174(d), and 1174.5, as well as Section 7 of Wage Order 8), and seventh (failure to pay wages due at termination, a claim founded upon CLC §§ 201, 202, and 203) causes of action in the Gonzalez complaint.  *Id*. at 35-39.

As to the applicability of Exclusion 7, CDI's argument was

7

rejected that RSUI should be estopped from asserting Exclusion 7
to deny coverage, because Exclusion 7 was not mentioned in the
insurer's final denial of coverage letter.  To demonstrate
estoppel:

> "(1) [T]he party to be estopped must know the facts;
> (2) he must intend that his conduct shall be acted
> upon, or must so act that the party asserting the
> estoppel had the right to believe that it was so
> intended; (3) the party asserting the estoppel must be
> ignorant of the true state of facts; and, (4) he must
> rely upon the conduct to his injury". *Spray, Gould &
> Bowers v. Assoc. Intern. Ins. Co.*, 71 Cal. App. 4th
> 1260, 1262 (1990).  Application of estoppel in the
> insurance context typically arises from some
> affirmative, misleading conduct on the part of the
> insurer.  *Spray*, 71 Cal. App. 4th at 1268.  Absent such
> affirmative conduct, estoppel may arise from silence
> when the party has a duty to speak, such as where a
> legal obligation requires disclosure.  *Id.*

*Id.* at 40.

Although CDI alleged that RSUI violated California's Fair
Claims Practices Regulations by failing to articulate all bases
for denial of coverage in the final denial letter, *id.* at 40-42,
this did not establish estoppel, nor an affirmative claim.  It
only establishes RSUI's failure to disclose:

> To establish estoppel, CDI must also demonstrate that
> it reasonably relied to its detriment on the assertions
> RSUI made in its final denial of coverage.  The
> Complaint contains no relevant allegations, and RSUI
> argues that CDI cannot allege reasonable detrimental
> reliance because RSUI denied coverage from the outset
> on alternative grounds.

*Id.* at 42.

CDI requested, and was granted, an opportunity to amend its
complaint, to "consistent with Federal Rule of Civil Procedure
11, allege the remaining elements of estoppel."  *Id.*  However, at

8

oral argument CDI's counsel acknowledged it was not pursuing an estoppel theory.

A footnote also addressed CDI's alternative argument that RSUI's failure to assert Exclusion 7 in its final denial of coverage decision constitutes a waiver of its rights to do so in this litigation:

> To demonstrate waiver, the insured bears the burden of proof to demonstrate that the carrier intentionally relinquished a right or that the carrier's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished. Waller v. Truck Insurance Exchange, Inc., 11 Cal.4th 1, 33-34 (1995). The Waller Court held:
>
>> holding that an insurer waives defenses not asserted in its initial denial of a duty to defend would be inconsistent with established waiver principles by erroneously implying an intent to relinquish contract rights where no such intent existed. Such a conclusion would contradict the holdings of the majority of California and sister-state cases addressing the waiver issue.
>
> Id. at 33. CDI fails to explain how its waiver theory can be reconciled with the holding in Waller.

Id. at 42-43 n.3. Additionally, anti-waiver language is included in the original letter. Doc. 26-2, Ex. B, at 3.

In the absence of estoppel or waiver, the district court rejected CDI's argument that the allegations in the Gonzalez complaint concerning denial of mandated meal periods, rest periods, reimbursement for employee uniforms, and wages due at termination, involve "Employment Practices Wrongful Acts" because they "reflect employment misrepresentations to employees that Plaintiff would comply with the law regarding such benefits,"

1   and/or "involve a failure to enforce adequate or consistent

2   organizational polices relating to employment."  *Id*. at 45.

3
4
5
6
7
8

> CDI's assertion that the CLC violations alleged in the
> Gonzalez complaint should be viewed as "employment-
> related misrepresentations" is a strained
> interpretation of the Policy language in light of the
> facts presented.  The Gonzalez action is limited to
> allegations based upon the failure to pay wages and
> related benefits.  The Gonzalez complaint does not
> allege any misrepresentations by CDI, nor is
> misrepresentation a required element of any of the
> Gonzalez causes of action, all of which relate to wage
> and hour conditions of employment.

9
10
11
12
13
14
15
16

> The same conclusion applies to CDI's argument that the
> Gonzalez allegations involve failures "to enforce
> adequate or consistent organization[al] polices
> relating to employment."  The underlying complaint does
> not mention or concern internal organizational policies
> at CDI.  CDI's interpretation of this language in the
> exception to Exclusion 7 is without limitation, as the
> Exclusion 7 exception would be triggered for any claims
> brought by employees against CDI, because any allegedly
> wrongful act by an employer vis-a-vis an employee could
> be the subject of an internal organizational policy.
> This is not what the Policy intended, or it would have
> included a blanket exception from Exclusion 7 for
> claims brought by Employees against an Insured.

17
18
19
20
21

> The Gonzalez Complaint contains no allegations related
> to any misrepresentations, failures to provide and/or
> enforce company rules, negligence, or civil rights
> violations.  The exception for "Employment Practices
> Wrongful Acts" provided under Exclusion 7 does not here
> apply.  Accordingly, Exclusion 7 bars coverage for all
> of the CLC claims in the Gonzalez lawsuit, as they are
> between Insureds and do not qualify as "Employment
> Practices Wrongful Acts."

22  *Id*. at 45-46.  Application of Exclusion 7 eliminated all of

23  Plaintiff's CLC claims.  RSUI's motion to dismiss based on the

24  application of Exclusion 7 was granted with leave to amend.

25      Finally, the eighth cause of action in *Gonzalez*, which

26  alleges that CDI violated the Unfair Competition Law ("UCL") as a

27  result of the failure to comply with various provisions of the

28

                                    10

CLC, was dismissed with leave to amend.  *Id*. at 47-48.  Because the UCL "borrows" violations from other laws by making them independently actionable as unfair competitive practices, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003), any "Loss" under the UCL would "necessarily result from any underlying CLC violations."  As RSUI was absolved of the responsibility to provide coverage for the other causes of action in the Gonzalez lawsuit, no UCL claim could exist.  *Id*.

F.   <u>August 11, 2009 Dismissal With Leave to Amend.</u>

Plaintiffs filed the FAC on April 9, 2009.  In response to Defendants' motion to dismiss the FAC, Plaintiff's counsel conceded that no estoppel-related allegations are contained in the FAC.  Doc. 36 at 12.

As to implied waiver, the FAC contained new allegations that Defendant impliedly waived its right to rely on Exclusion 7.  The district court articulated the relevant standard:

> To demonstrate waiver, the insured bears the burden of proof to demonstrate <u>that the carrier intentionally relinquished a right or that the carrier's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished</u>.  *Waller v. Truck Insurance Exchange*, Inc., 11 Cal. 4th 1, 33-34 (1995)[:]
>
>> holding that an insurer waives defenses not asserted in its initial denial of a duty to defend would be inconsistent with established waiver principles by erroneously implying an intent to relinquish contract rights where no such intent existed.  Such a conclusion would contradict the holdings of the majority of California and sister-state cases addressing the waiver issue.

11

*Id.* at 33.

*Id.* at 12-13.

The district court rejected CDI's argument that an implied waiver could arise by virtue of Defendants' alleged violation of California's Fair Claim Practices Regulations ("CFCPRs"), which, among other things requires insurers to provide written explanations of the bases for denying claims, but do not create enforceable claims for damages.  *Id.* at 13-16.

However, CDI also argued that the FAC satisfies the *Waller* implied waiver standard, which requires conduct "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished."

The FAC alleges:

> 18. At the time RSUI made its final decision to deny coverage it was aware that, with respect to the handling and adjustment of claims in the state of California, it was obligated to comply with the mandatory provisions of the California Fair Claim Practices and Settlement Act, 10 C.C.R. §2695.1, et seq.
>
> 19. Upon information and belief, CALIFORNIA DAIRIES alleges that at the time RSUI made its final decision to deny coverage, it was aware that the California Fair Claims and Settlement Practices Regulations, specifically 10 C.C.R. §2695.7(b)(1) required RSUI to set forth in writing to CALIFORNIA DAIRIES a statement listing all bases for such denial, which would include reference to any and all potentially applicable coverage provisions of its policy.
>
> 20. Upon information and belief, CALIFORNIA DAIRIES alleges that at the time RSUI made its final decision to deny coverage, it was aware that under 10 C.C.R. §2695.6(b), it was required to provide thorough and adequate training regarding the California Fair Claims

12

and Settlement Practices Regulations to its agents
involved with the handling and adjustment of claims so
that they would be fully and completely familiar with
all provisions of the regulations.

21. Upon information and belief, CALIFORNIA DAIRIES
alleges that because of the mandatory provisions
provided by the California Fair Claims and Settlement
Practices Regulations, RSUI trained its representatives
involved with the handling and adjusting of claims,
that the failure to set forth specifically all coverage
provisions potentially applicable as a basis for
denying coverage, in the written denial letter mandated
by the California Insurance Regulations, would and
could constitute a waiver of RSUI's right to
subsequently assert additional coverage provisions as a
basis to deny coverage.

22. Upon information and belief, CALIFORNIA DAIRIES
alleges that based on the mandatory provisions of the
California Insurance Regulations, RSUI trained its
representatives involved with the handling and
adjustment of insurance claims, that it would be
inconsistent with RSUI's understanding of the
regulations and RSUI's rights, for RSUI to attempt to
assert a denial of coverage on a basis which RSUI knew
or should have known at the time it issued its final
written denial letter, but which RSUI failed to assert
or identify at the time it issued its final written
denial letter.

Assuming, the truth of these allegations, as is required on

a motion to dismiss, the August 11, 2009 Decision reasoned:

[I]f RSUI trained its representatives that failure to
include all potentially applicable coverage provisions
in a denial letter could constitute a waiver of RSUI's
right to subsequently assert any omitted bases for
denying coverage, RSUI's failure to include Exclusion 7
in the final denial letter arguably constitutes conduct
"so inconsistent with an intent to enforce" Exclusion 7
so as to "induce a reasonable belief that such right
has been relinquished."

*Id.* at 17-18.

RSUI argued that CDI could not have reasonably believed that

RSUI intended to relinquish its right to assert Exclusion 7

because the denial letter specifically states that "nothing in

13

this letter nor any action taken by us in connection with this matter should be construed as an admission of coverage or waiver of any right RSUI might have at law or under the policy." *See* Doc. 26-2, Ex. B, at 3.

The district court rejected RSUI's argument, concluding that the existence of conduct "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished," presented a question of fact to be determined by the jury:

> "Whether there has been a waiver is usually regarded as a question of fact to be determined by the jury...." *Old Republic Ins. Co v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 679 (2000). In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party. *TwoRivers*, 174 F.3d at 991. RSUI is correct that a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Here, however, it is not unreasonable to infer from the allegations of the FAC that a waiver occurred. Although the allegations are not particularly robust, as they are on information and belief, the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949.

*Id.* at 18.

### III. STANDARD OF DECISION

A party may move for judgment on the pleadings after the pleadings are closed.  Fed. R. Civ. P. 12(c).  A Rule 12(c) motion challenges the legal adequacy of the opposing party's pleadings.  *Westlands Water Dist. v. Bureau of Reclamation*, 805

14

F. Supp. 1503, 1506 (E.D. Cal. 1992).   In deciding a motion for judgment on the pleadings, a court must "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).   "[T]he allegations of the moving party which have been denied are assumed to be false."   *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

"Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming*, 581 F.3d 922. Judgment on the pleadings is not appropriate if the court "goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." *Hal Roach Studios*, 896 F.2d at 1550.   "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss [or motion for judgment on the pleadings] into a motion for summary judgment."   2009 WL 2871532, 342 F.3d 903, 908 (9th Cir. 2003); *see also Summit Media LLC v. City of Los Angeles*, 530 F. Supp. 2d 1084, 1096 (C.D. Cal. 2008).

### IV. DISCUSSION

This motion for judgment on the pleadings presents two, seemingly distinct lines of authority.  The first, relied upon by RSUI, suggests that, as a matter of law, waiver cannot be used "to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom."  The second, relied upon by CDI and the *Waller* case cited in the March 20, and August 11, 2009 Memoranda Decisions, provides that waiver may apply whenever a party's acts are "inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished."

A.   **Caselaw Suggesting Waiver Cannot Be Used to Bring Within The Coverage of a Policy Risks Not Covered by or Expressly Excluded from its Terms.**

The central premise of RSUI's motion for judgment on the pleadings is that, even assuming the facts alleged in the complaint demonstrate conduct "so inconsistent with an intent to enforce [Exclusion 7] as to induce a reasonable belief that such right has been relinquished," an insurer cannot, as a matter of law, waive the right to apply an exclusionary provision, which would otherwise prevent coverage from arising where the insurance contract does not include a risk within the insuring agreement.

In *Aetna Casualty & Surety Co. v. Richmond*, 76 Cal. App. 3d 645, 648 (1977), the insured, an owner of a sporting goods store, was sued by a patron who suffered injuries when her ski bindings,

16

adjusted by the insured, failed to release during a fall.  The insurance company defended the action under a reservation of rights that stated:  "This Company will provide a defense for you as per the terms of the insurance policy, but this Company does not waive any of its Rights under the terms, conditions and provisions of the insurance policy.  Therefore, if a judgment is entered against you for damages that are not covered under the policy, this Company will not be responsible for that judgment."  *Id*. at 649-50.   The insurer later sought declaratory relief that it had no duty to defend or indemnify the insured because the policy expressly excluded claims for products liability.  *Id*. at 648-49.

The insured argued that, by defending the action, Aetna waived the benefit of any exclusionary clauses.   *Id*. at 652-53.  The *Aetna* court rejected this argument, reasoning:

> The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, <u>or risks expressly excluded therefrom</u>, and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of forfeiture....

*Id*.

Similarly, *Manneck v. Lawyers Title Insurance Corp.*, 28 Cal. App. 4th 1294, 1298 (1994), concerned a title insurance policy purchased by the insureds at the time they acquired their home.  When the insureds discovered that the home's swimming pool and

17

deck encroached onto a neighbor's property, they notified their insurer of the problem. *Id.* The insurance company defendant sent plaintiffs a letter in which it explained that coverage is only provided if plaintiffs are forced to remove an existing structure. As "there [was] no such impending removal," the letter explained that "there is <u>technically</u> no coverage." *Id.* Nevertheless, the insurance agent explained that "as a courtesy to you, [he had] been attempting to resolve the matter...." informally. *Id.*

*Manneck* held that the insurer's conduct could not possibly constitute waiver, citing the rule from *Aetna* that "the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom...." *Id.* at 1302

Even more directly on point is *R & B Auto Center, Inc. v. Farmers Group, Inc.*, 140 Cal. App. 4th 327 (2006), which concerned a "lemon law" insurance policy held by a car dealership. The dealership was sued by a purchaser of a <u>used</u> car under the lemon law and tendered the suit to its insurance carrier. The carrier refused coverage because the policy, by its terms, only applied to the sale of <u>new</u> vehicles. The dealership sued the insurance carrier on numerous coverage-related theories, but did not initially include a claim for waiver.

18

On the eve of trial, the dealership sought to amend its complaint to add a waiver claim.  The dealership maintained that the insurer "deliberately chose not to deny either the duty to defend or the duty to indemnify, leaving the coverage determination up in the air, despite a regulatory requirement [contained in the CFCPR, 10 Cal. Code Regs. § 2695.7(b)] that the insurer either defend or deny coverage."  *Id*. at 351.  The dealer argued that the failure to comply with the procedural requirements of the CFCPRs, demonstrated that the insurer "waived the right to deny coverage...."  *Id*.

In support of is waiver argument, R & B cited *Chase v. Blue Cross of California,* 42 Cal. App. 4th 1142, 1148 (1996), which concerned an insured's assertion that the defendant insurer had forfeited the right to invoke a policy's arbitration clause.  In *Chase*, the appellate court held that an insurer could waive a contractual right under certain circumstances and remanded the matter to the trial court for a determination of whether the insurer had indeed forfeited the right to invoke the arbitration clause on the facts of the case.

*R & B* distinguished *Chase*, reasoning that the waiver alleged by the dealership "[did] not involve the forfeiture of a contractual right under the policy.  Rather, it involve[d] the use of the theories of waiver and estoppel to create coverage where none otherwise exists -- that is, to create an otherwise

19

nonexistent written contract providing lemon law coverage for used car sales, in order to use the newly created contract as the basis for a claim of breach.  The distinction is key." *Id*. at 352 (emphasis added).  Citing *Aetna*, *R & B* reiterated that waiver may not be used to create coverage where a risk is "expressly excluded." *Id*.

CDI attempts to distinguish *Aetna* and its progeny.  First, CDI argues that, despite relying on the general rule that waiver and estoppel cannot be used to create coverage, *Manneck* "ultimately found that the insured had provided no facts to establish a basis for waiver or estoppel."  Doc. 42 at 10.  This is an inaccurate description of *Manneck's* reasoning.  Although *Manneck* did evaluate whether plaintiffs had established reliance, an element of <u>estoppel</u>, *Manneck* did not evaluate whether there were facts to support a <u>waiver</u> claim, finding any factual inquiry "of no consequence because of the inapplicability of the doctrines of estoppel or waiver" to create coverage where none was provided by the contract.  The entire relevant paragraph reads:

> [C]ontrary to plaintiffs' assertion, coverage under an insurance policy cannot be established by estoppel or waiver. "The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of

forfeiture...." *Aetna Casualty & Surety Co. v. Richmond*
(1977) 76 Cal. App. 3d 645, 653.) Accordingly,
plaintiffs' reliance on the fact that defendant's staff
attorney who handled plaintiffs' claim testified that
he never reserved rights or denied coverage and that he
acted consistent with the contractual duties of the
insurer in the event of a claim for which the defendant
might have been liable, not only fails to establish the
prerequisite element of reliance for the doctrine of
estoppel (*see Equitable Life Assurance Society v.
Berry, supra*, 212 Cal. App. 3d at p. 842), <u>but most
significantly is of no consequence because of the
inapplicability of the doctrines of estoppel or waiver</u>.

28 Cal. App. 4th at 1303 (emphasis added).

CDI further attempts to distinguish *Manneck* and *R & B* on

their facts.  Doc. 42 at 10-11.  For example, in *Manneck*, the

insureds were repeatedly advised, in writing, of the controlling

coverage defenses.  In *R & B*, the insureds were never issued a

denial letter that left out one particular basis for denying

coverage, while asserting others.  Here, by contrast, RSUI's

final denial letter was based solely on Exclusion 4.  However,

*Aetna*, *Manneck*, and *R & B* suggest that these are distinctions

without a difference because an insured is <u>barred as a matter of

law</u> from asserting that an insurer impliedly waived an

exclusionary provision, regardless of the operative facts, in the

face of an express exclusion.


B.   <u>Caselaw suggesting Waiver May Apply Whenever a Party's Acts
     Are "So Inconsistent with an Intent to Enforce the Right as
     to Induce a Reasonable Belief that Such Right has been
     Relinquished."</u>

The California Supreme Court's decision in *Waller v. Truck

Insurance Exchange, Inc.*, 11 Cal. 4th 1 (1995), undermines RSUI's

21

reliance on *Aetna*, *Manneck*, and *R & B*, as a basis for dismissal. *Waller* concerned a commercial general liability ("CGL") policy that provided coverage for bodily injury or property damage caused by the insured's act or omission. *Id.* at 11. A former executive sued the insured for, among other things, economic losses and emotional distress stemming from a demotion. *See id.* at 11-12. The insured tendered the lawsuit to Truck Insurance Exchange ("TIE") under the CGL policy, but TIE denied coverage, asserting in its denial letter that the lawsuit was "essentially a shareholder dispute" that involved uncovered "intentional acts." *Id.* at 31. The Appellate and Supreme Courts concluded that the executive's claims of emotional distress were arguably covered by the bodily injury language in the CGL policy, but for the fact that such policies are "not intended to cover economic losses." *Id.* at 15. As the executive's claims of emotional distress "flowed from" an underlying claim of economic loss, those claims were not covered either. *Id.* at 15-16.

However, TIE's initial denial letter failed to specifically explain that the policy did not cover "economic losses." Accordingly, the insured asserted that TIE waived its right to argue non-coverage for claims related to "economic loss." The *Waller* court defined the key inquiry as follows:

> In essence, we are asked to consider whether the doctrine of waiver may be invoked to create coverage for losses that the CGL policy by its terms did not cover.

22

*Id*. at 31.

Waller then reviewed the general rules on the subject of waiver:

> Case law is clear that waiver is the intentional relinquishment of a known right after knowledge of the facts.  The burden is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and doubtful cases will be decided against a waiver. Waiver always rests upon intent.  The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right.
>
> ...<u>California courts have applied the general rule that waiver requires the insurer to intentionally relinquish its right to deny coverage and that a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial.</u>

*Id*. at 31-32 (internal citations and quotations omitted; emphasis added).

Guided by the general rule that "a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial," *Waller* rejected the insured's reliance on dictum from *McLaughlin v. Connecticut General Life Ins. Co.*, 565 F. Supp. 434, 451 (N.D. Cal. 1983), that suggested "an insurance company which relies on specified grounds for denying a claim" automatically waives "the right to rely in a subsequent litigation on any other grounds which a reasonable investigation would have uncovered."  Instead, *Waller* followed *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952

F.2d 1551, 1559 (9th Cir. 1991), which rejected application of an
<u>automatic</u> waiver rule and determined that under California law,
an insurer waives defenses to coverage not asserted in its denial
only if the insured can show misconduct by the insurer or
detrimental reliance by the insured:

> T.I.E. and Farmers assert *McLaughlin* [] has been
> superseded by the Ninth Circuit decision in *Intel* []
> which concluded that "in *McLaughlin* it was necessary to
> find waiver to protect insureds who had been misled by
> the insurer's statements as to the denial of coverage."
> (*Intel, supra*, 952 F.2d at p. 1560.) <u>Nonetheless, the</u>
> <u>*Intel* court rejected application of an automatic waiver</u>
> <u>rule and determined that under California law, an</u>
> <u>insurer waives defenses to coverage not asserted in its</u>
> <u>denial only if the insured can show misconduct by the</u>
> <u>insurer or detrimental reliance by the insured.</u>
> (Ibid.....)....

> We agree with *Intel*, supra, 952 F.2d at page 1559, and
> decline to follow the *McLaughlin* rule of automatic
> waiver. A holding that an insurer waives defenses not
> asserted in its initial denial of a duty to defend
> would be inconsistent with established waiver
> principles by erroneously implying an intent to
> relinquish contract rights where no such intent
> existed. Such a conclusion would contradict the
> holdings of the majority of California and sister-state
> cases addressing the waiver issue. (*See, e.g.,*
> *Velasquez v. Truck Ins. Exchange, supra,* 1 Cal.App.4th
> 712, 722.)

> As the Intel court recognized, in the insurance context
> the terms "waiver" and "estoppel" are sometimes used
> interchangeably, even though estoppel requires proof of
> the insured's detrimental reliance. (*Intel, supra*, 952
> F.2d at p.1560.) <u>Nonetheless, as the Intel court</u>
> <u>observed, "[w]aiver is an affirmative defense, for</u>
> <u>which the insured bears the burden of proof," and</u>
> <u>"California courts will find waiver when a party</u>
> <u>intentionally relinquishes a right or when that party's</u>
> <u>acts are so inconsistent with an intent to enforce the</u>
> <u>right as to induce a reasonable belief that such right</u>
> <u>has been relinquished." (*Id*. at p. 1559.)</u>

24

*Id*. at 33-34.   Applying this standard from *Intel*, *Waller* found

that TIE's denial letter <u>did not show any intent to relinquish</u>

<u>the right to assert the "economic loss" rationale</u>:

> The present facts do not show that T.I.E.'s denial
> letter indicated an intention on the part of the
> insurer to relinquish additional reasons for denial of
> a duty to defend. Nor have plaintiffs shown that
> T.I.E.'s actions following its defense denial were
> inconsistent with its intent to enforce the terms of
> the policy. Accordingly, plaintiffs have not shown that
> T.I.E.'s denial of a defense induced a reasonable
> belief in plaintiffs that T.I.E. intended to waive
> additional policy defenses.

*Id*. at 34.[1]

    *R & B*, the only case cited by CDI that post-dates *Waller*,

does not explicitly apply *Waller's* generic rule that courts

should "find waiver when a party intentionally relinquishes a

---

    [1] In response to CDI's reliance on *Waller*, RSUI argues that
California courts have only found two exceptions to *Aetna's*
holding that waiver cannot be used to bring "within the coverage
of a policy risks not covered by its terms, or risks explicitly
excluded therefrom."   76 Cal. App. 3d at 653.   The first such
exception, according to RSUI allows implied waiver to operate
when an insurer fails to assert a ground for forfeiture.   *See
e.g.*, *Elliano v. Assurance Co. of Am.*, 3 Cal. App. 3d 446 (197)
(insurer waived requirement that insured submit formal proof of
loss).   The second exception cited by RSUI permits the doctrine
of implied waiver to create coverage where an insurer provides an
unconditional defense to its insured.   *See, e.g., Miller v. Elite
Ins. Co.*, 100 Cal. App. 3d 739 (1980) (applying a test akin to
estoppel to find that an insurer's unconditional defense to an
action constituted a waiver of the terms of the policy).
    But, RSUI essentially ignores *Waller* itself, which concerned
the application of waiver <u>to an exclusionary provision</u>.   11 Cal.
4th at 34.   Although *Waller* ultimately concluded waiver was not
established, it expressly relied upon rule that expressly permits
waiver to operate under certain circumstances

25

right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished."  Rather *R&B* relied on the 1994 appellate court decision in *Mannek* for the proposition that implied waiver cannot, as a matter of law, ever be used to "bring within the coverage of a policy ... risks expressly excluded therefrom...."  140 Cal. App. 4th at 352 (citing *Manneck*, 28 Cal. App. 4th at 1303).

This use of *Manneck* is arguably in conflict with *Waller*, a 1995 decision of the California Supreme Court.  *Waller*, a case about the application of waiver to an exclusionary provision, expressly permitted waiver to operate under certain circumstances.  11 Cal. 4th at 34.  Although *Waller* concluded on summary judgment that waiver was not established under the particular circumstances of that case, it suggests that whether waiver applies to an exclusionary provision is a question of fact that cannot be decided on the pleadings.

C.   Assuming, Arguendo, that Implied Waiver Can Create Coverage
     for Risks Specifically Excluded, Did RSUE Impliedly Waive
     the Right to Assert Exclusion 7?

In an argument raised for the first time in its reply brief, RSUI maintains that, even if implied waiver can be applied to prevent the assertion of an exclusionary provision, RSUI did not impliedly waive its right to assert Exclusion 7 in this case. Specifically, RSUI argues that CDI has failed to allege any facts

that could support a finding that RSUI's failure to assert

Exclusion 7 would induce a reasonably belief that they intended

to relinquish the right to assert that Exclusion, because RSUI

expressly reserved all rights under the policy.

The SAC alleges: (1) that RSUI had an internal policy that

the failure to set forth specifically all potentially applicable

policy provisions that could form a basis for denying coverage

would and could constitute a waiver of RSUI's right to

subsequently assert such policy provisions as a basis for denying

coverage; and (2) it would be inconsistent with RSUI's

understanding of the applicable regulations and RSUI's rights for

RSUI to attempt to assert an exclusion as a basis for denying

coverage if RSUI knew of, but failed to assert, that exclusion at

the time it issued its final written denial letter.   FAC ¶¶ 18-

22.

RSUI rejoins that these allegations do not establish that a

reasonable person would be induced to believe RSUI intended to

relinquish its right to assert Exclusion 7.   The August 11, 2009

Decision explained that the insured's intent with respect to

waiver is normally a question of fact to be determined by the

jury:

> "Whether there has been a waiver is usually regarded as
> a question of fact to be determined by the jury...."
> *Old Republic Ins. Co v. FSR Brokerage, Inc.*, 80 Cal.
> App. 4th 666, 679 (2000). In deciding whether to grant
> a motion to dismiss, the court "accept [s] all factual
> allegations of the complaint as true and draw[s] all
> reasonable inferences" in the light most favorable to

> the nonmoving party.  *TwoRivers*, 174 F.3d at 991.  RSUI
> is correct that a court is not "required to accept as
> true allegations that are merely conclusory,
> unwarranted deductions of fact, or unreasonable
> inferences."  *See Sprewell v. Golden State Warriors*,
> 266 F.3d 979, 988 (9th Cir. 2001).  Here, however, it
> is not unreasonable to infer from the allegations of
> the FAC that a waiver occurred.  Although the
> allegations are not particularly robust, as they are on
> information and belief, the complaint "contain[s]
> sufficient factual matter, accepted as true, to 'state
> a claim to relief that is plausible on its face.'"
> *Iqbal*, 129 S. Ct. at 1949.

Doc. 36 at 18.

RSUI suggests that its inclusion of "strongly worded anti-waiver language in its first letter....necessarily and absolutely preclude[s] a reasonable person from believing that RSUI intended to relinquish its rights to assert Exclusion 7 inasmuch as the use of such language would have contradicted the internal policies that CDI alleges existed."  Doc. 49 at 6.  RSUI's argument continues:

> [T]he use of anti-waiver language in the first denial
> letter would necessarily contradict [the] purported
> internal policy that the failure to raise a specific
> ground for denial of coverage could result in waiver
> since RSUI specifically invoked its right to raise
> additional grounds for coverage."

*Id.*

RSUI cites *Waller*, 11 Cal. 4th 1, and *Westoil Terminals, Inc. v. Industrial Indemnity Co.*, 110 Cal. App. 4th 139 (2003), for the proposition that "the use of anti-waiver language necessarily precludes the finding of implied waiver."  Doc. 49. at 7.  *Waller's* discussion of waiver actually contains language that suggests exactly the opposite:

28

> We address this issue, notwithstanding the antiwaiver clause in T.I.E.'s policy. That clause states the insurer does not waive rights or terms under the policy in the absence of an endorsement and focuses on the terms and conditions of the policy itself, rather than on the insurer's claims practices. In sum, the clause does not affect the insured's right to assert waiver of defenses in a denial letter.

11 Cal. 4th at 31.

Although *Westoil* does conclude that the insurer's reservation of rights "evidence[d] its intent not to waive any defense....," it did so in the context of an examination of all the evidence in the case.  110 Cal. App. 4th at 151.  Only after finding that no other evidence in the appellate record supported a finding of waiver did Westoil conclude waiver did not apply. Contrary to RSUI's contention, the use of anti-waiver language was not dispositive.  RSUI's intent is a question of fact that cannot be resolved on the present record.

D.    Other Issues Raised By CDI.

CDI also attempts to revisit issues decided in previous motions to dismiss.  For example, CDI argues that the CFCPRs "were adopted to set forth minimum standards for the proper handling of claims."  It is undisputed that a violation of these regulations may infer a "lack of reasonableness by the insurer" in the context of a breach of contract or bad faith claim, *see Rattan v. United Services Auto. Ass'n*, 84 Cal. App. 4th 715, 724 (2000), but the August 11, 2009 Decision rejected CDI's argument that an implied waiver could arise by virtue of Defendants'

alleged violation of the CFCPRs alone.  Doc. 36 at 13-16.
Nothing new is provided to warrant reconsideration.

Although a violation of administrative regulations issued by
the California Insurance Commissioner, such as the CFCPRs, may
provide a basis for estoppel against an insurer's assertion of
certain defenses, *see Spray, Gould & Bowers, v. Assoc. Intern.*
*Ins. Co.*, 71 Cal. App. 4th 1260 (1999), CDI has not stated a
claim for estoppel, and has disclaimed any intent to do so.

E.   Other Issues Raised by RSUI.

At issue in the first round of motions to dismiss is the
CFCPR's use of the terms "first party" and "third party"
claimant.  The March 20, 2009 Decision interpreted those terms as
follows:

> CDI asserts that RSUI violated the requirements of 10
> CCR § 2695.7(b)(1) because it did not assert Exclusion
> 7 in its response to CDI's request for reconsideration.
> Complaint at ¶¶ 11, 14. RSUI rejoins that, 10 CCR §
> 2695.7(b)(1) explicitly differentiates between insurer
> requirements for first party claims as opposed to third
> party claims, requiring specificity in denial only for
> first party claims.  RSUI asserts that the claims in
> this case are third party claims, citing *Garvey v.*
> *State Farm Fire & Casualty Co.*, 48 Cal. 3d 395 (1989),
> for the general definitions of the relevant terms:
>
>> If the insured is seeking coverage against loss or
>> damage sustained by the insured, the claim is
>> first party in nature.  If the insured is seeking
>> coverage against liability of the insured to
>> another, the claim is third party in nature.
>
> *Id*. at 399 & n.2

> However, the California Fair Claims Practices
> Regulations specifically define a "first party
> claimant" as "any person asserting a right under an
> insurance policy as a named insured, other insured or
> beneficiary under the terms of that insurance
> policy...." 10 CCR § 2695.2(f). Here, by requesting
> coverage under the Policy, CDI is a "first party
> claimant," entitling it to a denial that explicitly
> explains which exclusions apply under 10 CCR §
> 2695.7(b)(1).

Doc. 24 at 41-42.

RSUI now attempts to revisit this ruling, raising the same arguments that were previously rejected (without formally moving for reconsideration).  RSUI argues that by distinguishing between first- and third- party "claims," it is "clear" that the legislature is not referring to its own regulatory definitions of first- and third-party "claimants."  Doc. 49 at 10.  Rather, RSUI again suggests that the general definitions of first- and third-party claims from Garvey should control.  RSUI offers no new legal authority to support reconsideration of the August 11, 2009 decision.  Moreover, RSUI's position is untenable in light of the statutory language.

The relevant CFCPR notice provision states:

> Where an insurer denies or rejects a first party claim,
> in whole or in part, it shall do so in writing and
> shall provide to the claimant a statement listing all
> bases for such rejection or denial and the factual and
> legal bases for each reason given for such rejection or
> denial which is then within the insurer's knowledge.
> Where an insurer's denial of a first party claim, in
> whole or in part, is based on a specific statute,
> applicable law or policy provision, condition or
> exclusion, the written denial shall include reference
> thereto and provide an explanation of the application

> of the statute, applicable law or provision, condition
> or exclusion to the claim. Every insurer that denies or
> rejects a third party claim, in whole or in part, or
> disputes liability or damages shall do so in writing.

10 CCR § 2695.7(b)(1)

The CFCPR's do not define "first party claim" and "third

party claim," but do define "first party claimant" and "third

party claimant" as follows:

> (f) "First party claimant" means any person asserting a
> right under an insurance policy as a named insured,
> other insured or beneficiary under the terms of that
> insurance policy, and including any person seeking
> recovery of uninsured motorist benefits;

> ***

> (x) "Third party claimant" means any person asserting a
> claim against any person or the interests insured under
> an insurance policy;

10 CCR § 2695.2.

The most straightforward interpretation of the statutory

language is that each type of "claimant" is associated with a

type of "claim."  In other words, a first party claimant is a

person who brings a first party claim.  This is supported by

other provisions within the CFCPRs.  For example, 10 CCR §

2695.7(a) provides:

> No insurer shall discriminate in its claims settlement
> practices based upon the claimant's age, race, gender,
> income, religion, language, sexual orientation,
> ancestry, national origin, or physical disability, or
> upon the territory of the property or person insured.

Likewise, 10 CCR § 2695.7(b)(2) provides:

> Subject to the provisions of subsection 2695.7(k),

32

> nothing contained in subsection 2695.7(b)(1) shall
> require an insurer to disclose any information that
> could reasonably be expected to alert a <u>claimant</u> to the
> fact that the <u>subject claim</u> is being investigated as a
> suspected <u>fraudulent claim</u>.

In both provisions, the "claimant" is the individual in

possession of the "claim.

It follows that a "first party claimant" as that term is

defined in the CFCPRs, is the individual bringing a "first party

claim" as that term is used in the notice provision.  Because a

"first party claimant" is "any person asserting a right under an

insurance policy as a <u>named insured</u>, other insured or beneficiary

under the terms of that insurance policy...," 10 CCR § 2695.2(f)

(emphasis added), it also follows that a "first party claim" is a

claim brought by a "person asserting a right under an insurance

policy as a <u>named insured</u>, other insured or beneficiary under the

terms of that insurance policy...." (emphasis added).  As the

August 11, 2009 Decision concluded, by requesting coverage under

the Policy, CDI is a "first party claimant," entitling it to a

denial that explicitly describes which exclusions apply under 10

CCR § 2695.7(b)(1).  RSUI offers no reason to reconsider this

conclusion.

V. <u>CONCLUSION</u>

Although this is a close call, *Waller* suggests that the

operation of implied waiver is a question of fact that cannot be

decided on the pleadings, but rather requires factual

development, even if the waiver sought would create coverage

where coverage is expressly excluded by the insurance contract.

Defendant's motion for judgment on the pleadings is DENIED.  A

further scheduling conference will be held on 4/29/10 at 8:15

a.m. in Courtroom 3 (OWW) to set a final schedule for this case.


SO ORDERED
DATED:  April 15, 2010

                                        /s/ Oliver W. Wanger
                                       Oliver W. Wanger
                                 United States District Judge

34