1

2                    UNITED STATES DISTRICT COURT

3              FOR THE EASTERN DISTRICT OF CALIFORNIA

4

5   CALIFORNIA DAIRIES, INC.,         1:08-CV-00790 OWW DLB

6            Plaintiff,               MEMORANDUM DECISION GRANTING
                                      DEFENDANT'S MOTION FOR
7        v.                           SUMMARY JUDGMENT (DOC. 64)

8
    RSUI INDEMNITY COMPANY,
9
             Defendant.
10

11
                       I. **INTRODUCTION**
12
         This case concerns a directors and officers liability
13
    insurance policy ("the Policy") issued to Plaintiff, California
14
    Dairies, Inc. ("CDI"), by RSUI Indemnity Company ("RSUI").  RSUI
15
    denied coverage for claims asserted against CDI in a class action
16
    filed in Tulare County Superior Court, *Gonzalez v. CDI*, Case No.
17
    08-226450 ("*Gonzalez*" or the "Underlying Action"), in which
18
    employees and former employees of CDI allege CDI violated various
19
    provisions of the California Labor Code ("CLC") concerning wages,
20
    hours, and related matters.
21
         By letter dated March 3, 2008, RSUI initially denied
22
    coverage based upon Exclusions 1, 2 and 4 of the Policy.  Upon
23
    the insured's request for reconsideration, RSUI narrowed its
24
    grounds for denial to Exclusion 4.  Declaration of Phil Krajec,
25
    Doc. 64-4, Ex. I.
26

27

28
                                  1

CDI then filed this action seeking declaratory relief regarding coverage under the Policy.  RSUI moved to dismiss, arguing, among other things, that Exclusions 4 and 7 barred coverage.  The initial complaint was dismissed with leave to amend.  Doc. 24, filed Mar. 20, 2009.  Plaintiffs filed a First Amended Complaint ("FAC"), adding some new allegations, particularly pertaining to the issues of waiver and the applicability of Exclusion 7.  Doc. 25, filed Apr. 9, 2009.  Defendants' renewed motion to dismiss the FAC was granted in part and denied in part.  Doc. 36.  RSUI then moved for judgment on the pleadings, asserting that a waiver theory cannot create coverage "where none exists."  Doc. 40 at 3.  That motion was denied on April 16, 2010.  Doc. 59.

RSUI now moves for summary judgment on the ground that the undisputed evidence demonstrates that it did not waive its right to assert Exclusion 7.  Doc. 64-1.  In the alternative, RSUI argues that it does not have a duty to indemnify CDI for any of the damages sought in the *Gonzalez* lawsuit because those damages do not constitute covered "Loss."  *Id*.  Defendant filed a statement of undisputed fact ("DSUF") and supporting declarations.  Doc. 64-2 - 64-4.  CDI opposed, Doc. 66, and filed a response to Defendant's statement of facts, along with its own statement of undisputed fact ("PSUF"), Doc. 67, and supporting declarations, Docs. 68 & 69.  RSUI replied and filed

2

objections.  Docs. 72 & 73.  The motion came on for hearing in

Courtroom 3 (OWW) on June 14, 2010.

## II. BACKGROUND

### A.    The Underlying Gonzalez Lawsuit.

On January 4, 2008, Walter Gonzalez filed a class action

complaint against CDI in Tulare County Superior Court.  DSUF #3.

The *Gonzalez* Complaint alleges causes of action for:  1) failure

to pay minimum wage; 2) failure to pay regular and overtime

wages; 3) failure to provide mandated meal periods or pay an

additional hour of wages; 4) failure to provide mandated rest

periods or pay an additional hour of wages; 5) failure to

reimburse employees for costs incurred to acquire and/or maintain

company-required uniforms; 6) knowing and intentional failure to

comply with itemized wage statement provisions; and 7) failure to

timely pay wages due at termination.  *Id*.  The *Gonzalez* Complaint

also alleges that CDI violated California's Unfair Competition

Law, Cal. Bus. Prof. Code § 17200, *et seq*., as a result of CDI's

alleged violations of the CLC.  *Id*.  No violation of the federal

Fair Labor Standards Act ("FLSA") was alleged.  *See id.*

### B.    The Relevant Terms and Conditions of the Policy.

CDI is the named Insured, as the "Insured Organization"

under the Policy.  Krajec Decl., Doc. 64-4, Ex. A ("Policy").

Under the Policy's Insuring Agreement set forth at Section I(C),

RSUI agrees:

3

> With the <u>Insured Organization</u> that if a <u>Claim</u> for a <u>Wrongful Act</u> is first made against the <u>Insured Organization</u> during the Policy Period and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim and Circumstance of this policy, the <u>Insurer</u> will pay on behalf of the <u>Insured Organization</u> all Loss the <u>Insured Organization</u> is legally obligated to pay.

*See* Policy at p. 32 of 44 (underlined text is bold in original).

The Policy does not contain a duty to defend, but instead contains a duty to reimburse defense costs. *Id*. at p. 11 of 44 (Advancement of Defense Expenses; Insurer Has No Duty to Defend).

"Insured" is defined at Section III(G) of the Policy as "any Insured Organization and/or any Insured Person." *Id*. at p. 34 of 44. "Insured Organization" is defined as "the organization named in Item 1 of the Declarations Page...." *Id*. (Section III(H)). "Insured Person" is "any past, present or future director, officer, trustee, Employee, volunteer, or any committee member of a duly constituted committee of the Insured Organization." *Id*. (Section III(I)). "Employee" is defined as "any past, present or future employee of the Insured Organization...." *Id*. (Section II(D)). "Employment Practices Claim" is "any Claim alleging an Employment Practices Wrongful Act." *Id*. at p. 33 of 44 (Section II(E)).

An "Employment Practices Wrongful Act" is defined at Section II(F) of the Policy as any actual or alleged:

> 1.   Wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied employment contract;
>
> 2.   Employment related harassment (including but not limited to sexual harassment);

4

3.   Employment-related discrimination (including but not limited to discrimination based on age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

4.   Employment-related retaliation;

5.   Employment-related misrepresentation to an Employee or applicant for employment with the Insured organization;

6.   Libel, slander, humiliation, defamation or invasion of privacy (solely when employment related);

7.   Wrongful failure to promote;

8.   Wrongful deprivation of career opportunity, wrongful demotion or negligent Employee evaluation, including giving defamatory statements in connection with an Employee reference;

9.   Employment related wrongful discipline;

10.   Failure to grant tenure or practice privileges;

11.   Failure to provide or enforce adequate and consistent organization policies or procedures relating to employment;

12.   Violations of the following federal laws (as amended) including all regulations promulgated thereunder: a. Family and Medical leave Act of 1993; b. Americans with Disabilities Act of 1992 (ADA); c. Civil Rights Act of 1991; d. Age Discrimination in Employment Act of 1967 (ADEA), including the Older Workers Benefit Protection Act of 1990; or e. Title VII of the Civil Rights Law of 1964 (as amended) and 42 U.S.C. Section 1983, as well as the Pregnancy Discrimination Act of 1978;

13.   Violation of an Insured Person's civil rights relating to any of the above; or

14.   Negligent hiring, retention, training or supervision, infliction of emotional distress, failure to provide or enforce adequate or consistent organizational polices and procedures, or violation of an individual's civil rights, when alleged in conjunction with respect to any of the foregoing items 1 through 13.

*Id.*

C.    The Relevant Exclusions of the Policy.

The Policy also contains a number of specific exclusions. The Policy provides that the Insurer shall not be liable to make any payment for "Loss" in connection with any "Claim" made against the "Insured":

> 4. For violation of any of the responsibilities, obligations or duties imposed by the Employees Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety & Health Act, any rules or regulations of any of the foregoing promulgated thereunder, and amendments thereto or any similar provision of federal, state or local statutory law or common law; provided this EXCLUSION shall not apply to Loss arising from a Claim for employment related retaliation.
>
> ***
>
> 7. Brought by or on behalf of any Insured, except:...(b) an Employment Practices Claim brought by an Insured Person..."

*Id*. at p. 35 of 44 (underlined words bolded in original; italic emphasis added).  The Policy defines "Loss" at Section II(K) as follows:

> Loss means damages (including back pay and front pay), settlement, judgments (including pre- and post-judgment interest on a covered judgment) and Defense Expenses. Loss (other than Defense Expenses) shall not include:... 5. Any amounts owed as wages to any Employee, other than front pay or back pay; 6. Civil or criminal fines or penalties.

*Id*. at p. 34 of 44 (underlined words bolded in original).  This makes the insurance contract a "burning limits" policy.

6

1

**D.    Tender of Claim and Response Thereto.**

2

On January 9, 2008, CDI tendered the Gonzalez action to RSUI

3

pursuant to the Policy.  DSUF #6.  Phil Krajec, Vice-President of

4

RSUI, was assigned to act on RSUI's behalf with respect to CDI's

5

claim.  DSUF #7.  On January 14, 2008, Mr. Krajec's assistant,

6

Frankie Olds, sent an acknowledgment of claim letter to CDI and

7

its insurance broker, which stated "[n]othing stated by or on

8

behalf of RSUI Indemnity, or not stated, should be construed as a

9

limitation or waiver on any such rights, privileges or defenses."

10

DSUF #9.

11

On March 3, 2008, RSUI denied coverage, asserting Exclusions

12

1, 2, and 4.  DSUF #12.  RSUI did not assert Exclusion 7 as a

13

basis to deny coverage at that time.  *Id*.  The March 3, 2008

14

letter specifically indicated that it "is not intended to be an

15

exhaustive list of all coverage questions which could affect this

16

claim and nothing contained in this letter nor any action taken

17

should be construed as an admission of coverage or waiver of any

18

right RSUI might have at law or under the policy."  DSUF #13.

19

On May 5, 2008, CDI requested that RSUI reconsider its

20

denial of the claim.  DSUF #14.  In a May 14, 2008 letter, RSUI

21

conceded that Exclusions 1 and 2 would not apply, absent a final

22

and specific adjudication of certain conduct as against CDI.

23

DSUF #15.  RSUI continued to reply on Exclusion 4 to deny

24

coverage outright.  *Id*.  This second denial letter incorporated

25

26

27

28

"its denial of coverage" as set forth in the March 3, 2008 letter and further indicated "[n]othing contained in this letter is intended to supersede, limit or eliminate any coverage defenses asserted in our previous coverage declination letter."  DSUF #16.

On June 6, 2008, CDI filed this declaratory relief action against RSUI.  DSUF #17.

E.   March 20, 2009 Dismissal With Leave to Amend.

On September 2, 2008, Defendant moved to dismiss the initial complaint, arguing, among other things, that Exclusion 7 barred coverage for the *Gonzalez* lawsuit.  DSUF #19; Doc. 10.

A March 20, 2009 Decision concluded that Exclusion 4 bars any claim based upon a CLC provision similar to those of the FLSA.  Doc. 24 at 11-24.  RSUI's motion to dismiss was granted without leave to amend as to the first (failure to pay plaintiffs a minimum wage as required under CLC §§ 1197, 1194 and 1194.2), second (failure to pay regular and overtime wages in violation of CLC §§ 200, 204, 500, 510, 512, and 1194, and section 3 of Industrial Welfare Commission ("IWC") Wage Order 8), third and fourth (failure to provide meal and rest periods or pay an additional hour of wages based on CLC §§ 226.7 and 512, and Section 11 of IWC Wage Order 8) causes of action in the Gonzalez complaint.  *Id*. at 25-35.  RSUI's motion to dismiss was denied as to the applicability of Exclusion 4 to the fifth (failure to reimburse employees for costs incurred to acquire and/or maintain

company-required uniforms in violation of CLC § 2802 and Section 9 of Wage Order 8), sixth (failure to comply with the itemized wage statement provisions contained in CLC §§ 226, 1174(d), and 1174.5, as well as Section 7 of Wage Order 8), and seventh (failure to pay wages due at termination, a claim founded upon CLC §§ 201, 202, and 203) causes of action in the Gonzalez complaint.  *Id.* at 35-39.

As to the applicability of Exclusion 7, CDI's argument was rejected that RSUI should be estopped from asserting Exclusion 7 to deny coverage, because Exclusion 7 was not mentioned in the insurer's final denial of coverage letter.  To demonstrate estoppel:

> "(1) [T]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury". *Spray, Gould & Bowers v. Assoc. Intern. Ins. Co.*, 71 Cal. App. 4th 1260, 1262 (1990).  Application of estoppel in the insurance context typically arises from some affirmative, misleading conduct on the part of the insurer.  *Spray*, 71 Cal. App. 4th at 1268.  Absent such affirmative conduct, estoppel may arise from silence when the party has a duty to speak, such as where a legal obligation requires disclosure.  *Id.*

*Id.* at 40.

Although CDI alleged that RSUI violated California's Fair Claims Practices Regulations by failing to articulate all bases for denial of coverage in the final denial letter, *id.* at 40-42, this did not establish estoppel, nor an affirmative claim.  It

9

only establishes RSUI's failure to disclose:

> To establish estoppel, CDI must also demonstrate that
> it reasonably relied to its detriment on the assertions
> RSUI made in its final denial of coverage.  The
> Complaint contains no relevant allegations, and RSUI
> argues that CDI cannot allege reasonable detrimental
> reliance because RSUI denied coverage from the outset
> on alternative grounds.

*Id*. at 42.

CDI requested, and was granted, an opportunity to amend its

complaint, to "consistent with Federal Rule of Civil Procedure

11, allege the remaining elements of estoppel."  *Id*.  However, at

oral argument CDI's counsel acknowledged it was not pursuing an

estoppel theory.

A footnote also addressed CDI's alternative argument that

RSUI's failure to assert Exclusion 7 in its final denial of

coverage decision constitutes a waiver of its rights to do so in

this litigation:

> To demonstrate waiver, the insured bears the burden of
> proof to demonstrate that the carrier intentionally
> relinquished a right or that the carrier's acts are so
> inconsistent with an intent to enforce the right as to
> induce a reasonable belief that such right has been
> relinquished.  *Waller v. Truck Insurance Exchange*,
> Inc., 11 Cal.4th 1, 33-34 (1995).  The *Waller* Court
> held:
>
> > holding that an insurer waives defenses not
> > asserted in its initial denial of a duty to defend
> > would be inconsistent with established waiver
> > principles by erroneously implying an intent to
> > relinquish contract rights where no such intent
> > existed.  Such a conclusion would contradict the
> > holdings of the majority of California and sister-
> > state cases addressing the waiver issue.
>
> *Id*. at 33.  CDI fails to explain how its waiver theory
> can be reconciled with the holding in Waller.

1    *Id.* at 42-43 n.3.  Additionally, anti-waiver language is included

2    in the original letter.  Doc. 26-2, Ex. B, at 3.

3        In the absence of estoppel or waiver, the district court

4    rejected CDI's argument that the allegations in the Gonzalez

5    complaint concerning denial of mandated meal periods, rest

6    periods, reimbursement for employee uniforms, and wages due at

7    termination, involve "Employment Practices Wrongful Acts" because

8

9    they "reflect employment misrepresentations to employees that

10   Plaintiff would comply with the law regarding such benefits,"

11   and/or "involve a failure to enforce adequate or consistent

12   organizational polices relating to employment."  *Id.* at 45.

13

14           CDI's assertion that the CLC violations alleged in the
             Gonzalez complaint should be viewed as "employment-
             related misrepresentations" is a strained
15           interpretation of the Policy language in light of the
             facts presented.  The Gonzalez action is limited to
16           allegations based upon the failure to pay wages and
             related benefits.  The Gonzalez complaint does not
17           allege any misrepresentations by CDI, nor is
             misrepresentation a required element of any of the
18           Gonzalez causes of action, all of which relate to wage
             and hour conditions of employment.

19

20           The same conclusion applies to CDI's argument that the
             Gonzalez allegations involve failures "to enforce
             adequate or consistent organization[al] polices
21           relating to employment."  The underlying complaint does
             not mention or concern internal organizational policies
22           at CDI.  CDI's interpretation of this language in the
             exception to Exclusion 7 is without limitation, as the
23           Exclusion 7 exception would be triggered for any claims
             brought by employees against CDI, because any allegedly
24           wrongful act by an employer vis-a-vis an employee could
             be the subject of an internal organizational policy.
25           This is not what the Policy intended, or it would have
             included a blanket exception from Exclusion 7 for
26           claims brought by Employees against an Insured.

27           The Gonzalez Complaint contains no allegations related
             to any misrepresentations, failures to provide and/or
28           enforce company rules, negligence, or civil rights

                                    11

violations.  The exception for "Employment Practices Wrongful Acts" provided under Exclusion 7 does not here apply.  Accordingly, Exclusion 7 bars coverage for all of the CLC claims in the Gonzalez lawsuit, as they are between Insureds and do not qualify as "Employment Practices Wrongful Acts."

*Id*. at 45-46.  Application of Exclusion 7 eliminated all of Plaintiff's CLC claims.  RSUI's motion to dismiss based on the application of Exclusion 7 was granted with leave to amend.

Finally, the eighth cause of action in *Gonzalez*, which alleges that CDI violated the Unfair Competition Law ("UCL") as a result of the failure to comply with various provisions of the CLC, was dismissed with leave to amend.  *Id*. at 47-48.  Because the UCL "borrows" violations from other laws by making them independently actionable as unfair competitive practices, *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1144 (2003), any "Loss" under the UCL would "necessarily result from any underlying CLC violations."  As RSUI was absolved of the responsibility to provide coverage for the other causes of action in the Gonzalez lawsuit, no UCL claim could exist.  *Id*.

F.   August 11, 2009 Dismissal With Leave to Amend.

Plaintiffs filed the FAC on April 9, 2009.  In response to Defendants' motion to dismiss the FAC, Plaintiff's counsel conceded that no estoppel-related allegations are contained in the FAC.  Doc. 36 at 12.

As to implied waiver, the FAC contained new allegations that Defendant impliedly waived its right to rely on Exclusion 7.  The

12

district court articulated the relevant standard:

> To demonstrate waiver, the insured bears the burden of proof to demonstrate <u>that the carrier intentionally relinquished a right or that the carrier's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished</u>. *Waller v. Truck Insurance Exchange*, Inc., 11 Cal. 4th 1, 33-34 (1995)[:]
>
>> holding that an insurer waives defenses not asserted in its initial denial of a duty to defend would be inconsistent with established waiver principles by erroneously implying an intent to relinquish contract rights where no such intent existed.  Such a conclusion would contradict the holdings of the majority of California and sister-state cases addressing the waiver issue.
>
> *Id*. at 33.

*Id*. at 12-13.

The district court rejected CDI's argument that an implied waiver could arise by virtue of Defendants' alleged violation of California's Fair Claim Practices Regulations ("CFCPRs"), which, among other things requires insurers to provide written explanations of the bases for denying claims, but do not create enforceable claims for damages.  *Id.* at 13-16.

However, CDI also argued that the FAC satisfies the *Waller* implied waiver standard, which requires conduct "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished."

The FAC alleges:

> 18. At the time RSUI made its final decision to deny coverage it was aware that, with respect to the handling and adjustment of claims in the state of California, it was obligated to comply with the mandatory provisions of the California Fair Claim

13

Practices and Settlement Act, 10 C.C.R. §2695.1, et seq.

19. Upon information and belief, CALIFORNIA DAIRIES alleges that at the time RSUI made its final decision to deny coverage, it was aware that the California Fair Claims and Settlement Practices Regulations, specifically 10 C.C.R. §2695.7(b)(1) required RSUI to set forth in writing to CALIFORNIA DAIRIES a statement listing all bases for such denial, which would include reference to any and all potentially applicable coverage provisions of its policy.

20. Upon information and belief, CALIFORNIA DAIRIES alleges that at the time RSUI made its final decision to deny coverage, it was aware that under 10 C.C.R. §2695.6(b), it was required to provide thorough and adequate training regarding the California Fair Claims and Settlement Practices Regulations to its agents involved with the handling and adjustment of claims so that they would be fully and completely familiar with all provisions of the regulations.

21. Upon information and belief, CALIFORNIA DAIRIES alleges that because of the mandatory provisions provided by the California Fair Claims and Settlement Practices Regulations, RSUI trained its representatives involved with the handling and adjusting of claims, that the failure to set forth specifically all coverage provisions potentially applicable as a basis for denying coverage, in the written denial letter mandated by the California Insurance Regulations, would and could constitute a waiver of RSUI's right to subsequently assert additional coverage provisions as a basis to deny coverage.

22. Upon information and belief, CALIFORNIA DAIRIES alleges that based on the mandatory provisions of the California Insurance Regulations, RSUI trained its representatives involved with the handling and adjustment of insurance claims, that it would be inconsistent with RSUI's understanding of the regulations and RSUI's rights, for RSUI to attempt to assert a denial of coverage on a basis which RSUI knew or should have known at the time it issued its final written denial letter, but which RSUI failed to assert or identify at the time it issued its final written denial letter.

Assuming the truth of these allegations, as is required on a motion to dismiss, the August 11, 2009 Decision reasoned:

14

> [I]f RSUI trained its representatives that failure to
> include all potentially applicable coverage provisions
> in a denial letter could constitute a waiver of RSUI's
> right to subsequently assert any omitted bases for
> denying coverage, RSUI's failure to include Exclusion 7
> in the final denial letter arguably constitutes conduct
> "so inconsistent with an intent to enforce" Exclusion 7
> so as to "induce a reasonable belief that such right
> has been relinquished."

*Id.* at 17-18.

    RSUI argued that CDI could not have reasonably believed that

RSUI intended to relinquish its right to assert Exclusion 7

because the denial letter specifically states that "nothing in

this letter nor any action taken by us in connection with this

matter should be construed as an admission of coverage or waiver

of any right RSUI might have at law or under the policy." *See*

Doc. 26-2, Ex. B, at 3.

    The district court rejected RSUI's argument, concluding that

the existence of conduct "so inconsistent with an intent to

enforce the right as to induce a reasonable belief that such

right has been relinquished," presented a question of fact to be

determined by the jury:

> "Whether there has been a waiver is usually regarded as
> a question of fact to be determined by the jury...."
> *Old Republic Ins. Co v. FSR Brokerage, Inc.*, 80 Cal.
> App. 4th 666, 679 (2000). In deciding whether to grant
> a motion to dismiss, the court "accept [s] all factual
> allegations of the complaint as true and draw[s] all
> reasonable inferences" in the light most favorable to
> the nonmoving party. *TwoRivers*, 174 F.3d at 991. RSUI
> is correct that a court is not "required to accept as
> true allegations that are merely conclusory,
> unwarranted deductions of fact, or unreasonable
> inferences." *See Sprewell v. Golden State Warriors*,
> 266 F.3d 979, 988 (9th Cir. 2001). Here, however, it
> is not unreasonable to infer from the allegations of
> the FAC that a waiver occurred. Although the

15

1                 allegations are not particularly robust, as they are on
information and belief, the complaint "contain[s]

2                 sufficient factual matter, accepted as true, to 'state
a claim to relief that is plausible on its face.'"

3                 *Iqbal*, 129 S. Ct. at 1949.

4    *Id*. at 18.

5

6    G.    **April 16, 2010 Denial of Defendant's Motion for Judgment on the Pleadings.**

7         Defendant moved for judgment on the pleadings, arguing that,

8    as a matter of law, a waiver theory cannot create coverage "where

9    none exists."  Doc. 40 at 3.  After carefully reviewing the

10    arguably conflicting caselaw, the April 16, 2010 decision

11    concluded that the controlling case is the California Supreme

12    Court's decision in *Waller v. Truck Insurance Exchange, Inc.*, 11

13

14    Cal. 4th 1 (1995):

15                 *Waller* concerned a commercial general liability ("CGL")
policy that provided coverage for bodily injury or

16                 property damage caused by the insured's act or
omission.  *Id*. at 11.  A former executive sued the

17                 insured for, among other things, economic losses and
emotional distress stemming from a demotion.  *See id*.

18                 at 11-12.  The insured tendered the lawsuit to Truck
Insurance Exchange ("TIE") under the CGL policy, but

19                 TIE denied coverage, asserting in its denial letter
that the lawsuit was "essentially a shareholder

20                 dispute" that involved uncovered "intentional acts."
*Id*. at 31.  The Appellate and Supreme Courts concluded

21                 that the executive's claims of emotional distress were
arguably covered by the bodily injury language in the

22                 CGL policy, but for the fact that such policies are
"not intended to cover economic losses."  *Id*. at 15.

23                 As the executive's claims of emotional distress "flowed
from" an underlying claim of economic loss, those

24                 claims were not covered either.  *Id*. at 15-16.

25                 However, TIE's initial denial letter failed to
specifically explain that the policy did not cover

26                 "economic losses."  Accordingly, the insured asserted
that TIE waived its right to argue non-coverage for

27                 claims related to "economic loss."  The *Waller* court
defined the key inquiry as follows:

28

> In essence, we are asked to consider whether the
> doctrine of waiver may be invoked to create
> coverage for losses that the CGL policy by its
> terms did not cover.

*Id*. at 31.

*Waller* then reviewed the general rules on the subject
of waiver:

> Case law is clear that waiver is the intentional
> relinquishment of a known right after knowledge of
> the facts.  The burden is on the party claiming a
> waiver of a right to prove it by clear and
> convincing evidence that does not leave the matter
> to speculation, and doubtful cases will be decided
> against a waiver.  Waiver always rests upon
> intent.  The waiver may be either express, based
> on the words of the waiving party, or implied,
> based on conduct indicating an intent to
> relinquish the right.
>
> ...<u>California courts have applied the general rule
> that waiver requires the insurer to intentionally
> relinquish its right to deny coverage and that a
> denial of coverage on one ground does not, absent
> clear and convincing evidence to suggest
> otherwise, impliedly waive  grounds not stated in
> the denial</u>.

*Id*. at 31-32 (internal citations and quotations
omitted; emphasis added).

Guided by the general rule that "a denial of coverage
on one ground does not, absent clear and convincing
evidence to suggest otherwise, impliedly waive grounds
not stated in the denial," *Waller* rejected the
insured's reliance on dictum from *McLaughlin v.
Connecticut General Life Ins. Co.*, 565 F. Supp. 434,
451 (N.D. Cal. 1983), that suggested "an insurance
company which relies on specified grounds for denying a
claim" automatically waives "the right to rely in a
subsequent litigation on any other grounds which a
reasonable investigation would have uncovered."
Instead, *Waller* followed *Intel Corp. v. Hartford Acc. &
Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991), which
rejected application of an <u>automatic</u> waiver rule and
determined that under California law, an insurer waives
defenses to coverage not asserted in its denial only if

17

the insured can show misconduct by the insurer or
detrimental reliance by the insured:

> T.I.E. and Farmers assert *McLaughlin* [] has been
> superseded by the Ninth Circuit decision in *Intel*
> [] which concluded that "in *McLaughlin* it was
> necessary to find waiver to protect insureds who
> had been misled by the insurer's statements as to
> the denial of coverage." (*Intel, supra*, 952 F.2d
> at p. 1560.) <u>Nonetheless, the *Intel* court rejected
> application of an automatic waiver rule and
> determined that under California law, an insurer
> waives defenses to coverage not asserted in its
> denial only if the insured can show misconduct by
> the insurer or detrimental reliance by the
> insured</u>. *(Ibid.)*....

> We agree with *Intel*, supra, 952 F.2d at page 1559,
> and decline to follow the *McLaughlin* rule of
> automatic waiver. A holding that an insurer waives
> defenses not asserted in its initial denial of a
> duty to defend would be inconsistent with
> established waiver principles by erroneously
> implying an intent to relinquish contract rights
> where no such intent existed. Such a conclusion
> would contradict the holdings of the majority of
> California and sister-state cases addressing the
> waiver issue. (*See, e.g., Velasquez v. Truck Ins.
> Exchange, supra,* 1 Cal.App.4th 712, 722.)

> As the Intel court recognized, in the insurance
> context the terms "waiver" and "estoppel" are
> sometimes used interchangeably, even though
> estoppel requires proof of the insured's
> detrimental reliance. (*Intel, supra*, 952 F.2d at
> p.1560.) <u>Nonetheless, as the *Intel* court observed,
> "[w]aiver is an affirmative defense, for which the
> insured bears the burden of proof,"</u> and
> <u>"California courts will find waiver when a party
> intentionally relinquishes a right or when that
> party's acts are so inconsistent with an intent to
> enforce the right as to induce a reasonable belief
> that such right has been relinquished."</u> (*Id*. at p.
> 1559.)

*Id*. at 33-34.  Applying this standard from *Intel*,
*Waller* found that TIE's denial letter <u>did not show any
intent to relinquish the right to assert the "economic</u>

18

loss" rationale:

> The present facts do not show that T.I.E.'s denial
> letter indicated an intention on the part of the
> insurer to relinquish additional reasons for
> denial of a duty to defend. Nor have plaintiffs
> shown that T.I.E.'s actions following its defense
> denial were inconsistent with its intent to
> enforce the terms of the policy. Accordingly,
> plaintiffs have not shown that T.I.E.'s denial of
> a defense induced a reasonable belief in
> plaintiffs that T.I.E. intended to waive
> additional policy defenses.

*Id*. at 34.

> *R & B*, the only case cited by CDI that post-dates
> *Waller*, does not explicitly apply *Waller's* generic rule
> that courts should "find waiver when a party
> intentionally relinquishes a right or when that party's
> acts are so inconsistent with an intent to enforce the
> right as to induce a reasonable belief that such right
> has been relinquished."  Rather *R&B* relied on the 1994
> appellate court decision in *Mannek* for the proposition
> that implied waiver cannot, as a matter of law, ever be
> used to "bring within the coverage of a policy ...
> risks expressly excluded therefrom...."  140 Cal. App.
> 4th at 352 (citing *Manneck*, 28 Cal. App. 4th at 1303).

> This use of *Manneck* is arguably in conflict with
> *Waller*, a 1995 decision of the California Supreme
> Court.  *Waller*, a case <u>about the application of waiver
> to an exclusionary provision</u>, expressly <u>permitted</u>
> waiver to operate under certain circumstances.  11 Cal.
> 4th at 34.  Although *Waller* concluded on summary
> judgment that waiver was not established under the
> particular circumstances of that case, it suggests that
> whether waiver applies to an exclusionary provision is
> a question of fact that cannot be decided on the
> pleadings.

Doc. 59 at 21-26 (footnote omitted).

Waller indicates that waiver may be established in one of

two circumstances: (1) when the insurer commits misconduct; or

(2) when the insurer's acts are "so inconsistent with an intent

to enforce the right as to induce a reasonable belief that such

right has been relinquished." 11 Cal. 4th at 33-34.

RSUI also argued that CDI failed to allege any facts that

could support a finding that RSUI's failure to assert Exclusion 7

would induce a reasonable belief that RSUI intended to relinquish

the right to assert that Exclusion, because RSUI expressly

reserved all rights under the policy.  This argument was

rejected:

> The [FAC] alleges: (1) that RSUI had an internal policy
> that the failure to set forth specifically all
> potentially applicable policy provisions that could
> form a basis for denying coverage would and could
> constitute a waiver of RSUI's right to subsequently
> assert such policy provisions as a basis for denying
> coverage; and (2) it would be inconsistent with RSUI's
> understanding of the applicable regulations and RSUI's
> rights for RSUI to attempt to assert an exclusion as a
> basis for denying coverage if RSUI knew of, but failed
> to assert, that exclusion at the time it issued its
> final written denial letter.  FAC ¶¶ 18-22.
>
> RSUI rejoins that these allegations do not establish
> that a reasonable person would be induced to believe
> RSUI intended to relinquish its right to assert
> Exclusion 7.  The August 11, 2009 Decision explained
> that the insured's intent with respect to waiver is
> normally a question of fact to be determined by the
> jury:
>
> > "Whether there has been a waiver is usually
> > regarded as a question of fact to be determined by
> > the jury...."  *Old Republic Ins. Co v. FSR
> > Brokerage, Inc.*, 80 Cal. App. 4th 666, 679 (2000).
> > In deciding whether to grant a motion to dismiss,
> > the court "accept[s] all factual allegations of
> > the complaint as true and draw[s] all reasonable
> > inferences" in the light most favorable to the
> > nonmoving party.  *TwoRivers*, 174 F.3d at 991.
> > RSUI is correct that a court is not "required to
> > accept as true allegations that are merely
> > conclusory, unwarranted deductions of fact, or
> > unreasonable inferences."  *See Sprewell v. Golden*

20

1

*State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).
Here, however, it is not unreasonable to infer

2

from the allegations of the FAC that a waiver
occurred.  Although the allegations are not

3

particularly robust, as they are on information
and belief, the complaint "contain[s] sufficient

4

factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'"

5

*Iqbal*, 129 S. Ct. at 1949.

6

Doc. 36 at 18.

7

RSUI suggests that its inclusion of "strongly worded
anti-waiver language in its first letter....necessarily

8

and absolutely preclude[s] a reasonable person from
believing that RSUI intended to relinquish its rights

9

to assert Exclusion 7 inasmuch as the use of such
language would have contradicted the internal policies

10

that CDI alleges existed."  Doc. 49 at 6.  RSUI's
argument continues:

11

12

[T]he use of anti-waiver language in the first
denial letter would necessarily contradict [the]

13

purported internal policy that the failure to
raise a specific ground for denial of coverage

14

could result in waiver since RSUI specifically
invoked its right to raise additional grounds for

15

coverage."

16

*Id.*

17

RSUI cites *Waller*, 11 Cal. 4th 1, and *Westoil*

18

*Terminals, Inc. v. Industrial Indemnity Co.*, 110 Cal.
App. 4th 139 (2003), for the proposition that "the use

19

of anti-waiver language necessarily precludes the
finding of implied waiver."  Doc. 49. at 7.  *Waller's*

20

discussion of waiver actually contains language that
suggests exactly the opposite:

21

22

We address this issue, notwithstanding the
antiwaiver clause in T.I.E.'s policy. That clause

23

states the insurer does not waive rights or terms
under the policy in the absence of an endorsement

24

and focuses on the terms and conditions of the
policy itself, rather than on the insurer's claims

25

practices. In sum, the clause does not affect the
insured's right to assert waiver of defenses in a

26

denial letter.

27

11 Cal. 4th at 31.

28

21

1
2
3
4
5
6
7

> Although *Westoil* does conclude that the insurer's
> reservation of rights "evidence[d] its intent not to
> waive any defense....," it did so in the context of an
> examination of all the evidence in the case.  110 Cal.
> App. 4th at 151.  Only after finding that no other
> evidence in the appellate record supported a finding of
> waiver did *Westoil* conclude waiver did not apply.
> Contrary to RSUI's contention, the use of anti-waiver
> language was not dispositive.  RSUI's intent is a
> question of fact that cannot be resolved on the present
> record.

8   Doc. 59 at 26-30.

9

10                         III. <u>STANDARD OF DECISION</u>

11        Summary judgment is appropriate when "the pleadings, the

12   discovery and disclosure materials on file, and any affidavits

13   show that there is no genuine issue as to any material fact and

14   that the movant is entitled to judgment as a matter of law."

15   Fed. R. Civ. P. 56(c).  A party moving for summary judgment

16   "always bears the initial responsibility of informing the

17   district court of the basis for its motion, and identifying those

18   portions of the pleadings, depositions, answers to

19   interrogatories, and admissions on file, together with the

20   affidavits, if any, which it believes demonstrate the absence of

21   a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477

22

23   U.S. 317, 323 (1986) (internal quotation marks omitted).

24        Where the movant has the burden of proof on an issue at

25   trial, it must "affirmatively demonstrate that no reasonable

26   trier of fact could find other than for the moving party."

27   *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir.

28

2007); *see also S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (noting that a party moving for summary judgment on claim on which it has the burden at trial "must establish beyond controversy every essential element" of the claim) (internal quotation marks omitted).  With respect to an issue as to which the non-moving party has the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."  *Id.*

To defeat a motion for summary judgment, the non-moving party must show there exists a genuine dispute (or issue) of material fact.  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that

a reasonable jury could return a verdict for the nonmoving

party." *Id*. at 248.  In ruling on a motion for summary judgment,

the district court does not make credibility determinations;

rather, the "evidence of the non-movant is to be believed, and

all justifiable inferences are to be drawn in his favor."  *Id*. at

255.

## IV. DISCUSSION

A.   Waiver.

Defendant RSUI argues that the undisputed evidence cannot

support Plaintiff's allegation that RSUI waived its right to

assert Exclusion 7 as a basis for denying coverage.  *Waller*

confirmed the validity of earlier cases finding waiver when the

insured can show misconduct by the insurer or detrimental

reliance by the insured.  11 Cal. 4th at 33-34.  Specifically,

*Waller* explained that waiver may be found when insurer's acts are

"so inconsistent with an intent to enforce the right as to induce

a reasonable belief that such right has been relinquished."  *Id*.

at 33-34.

1.   Misconduct.

Plaintiff asserts that RSUI's conduct amounts to misconduct

that should result in a finding that RSUI waived the right to

assert Exclusion 7.  The entirety of Plaintiff's misconduct

theory is set forth as follows in its opposition brief:

24

Contrary to RSUI's claims, it did engage in misconduct when it attempted to assert new coverage provisions which had not been asserted in RSUI's previous denial letters.  This is especially true after RSUI had been given the opportunity to reconsider the matter but yet still denied coverage without asserting Exclusion 7.

From its own investigation, RSUI knew the underlying claims were being asserted by current or former California Dairies employees, and thus RSUI knew or should have known that Exclusion 7 was implicated. RSUI also knew, that to be fair and to be in compliance with the minimum standards mandated by the California Fair Claim Practices Regulations, it was required to assert all potentially applicable policy provisions in the denial letters sent to California Dairies.

RSUI's failure to assert Exclusion 7 in its prior denial letters, was not only inherently unfair, it was a clear violation of the very regulations which were adopted for the express purpose of setting forth minimum standards for the fair handling of claims. Such disregard of the California Fair Claim Practices Regulations is evidence a jury could consider in determining that RSUI breached the implied covenant of good faith and fair dealing.  *Jordan v. Allstate Ins. Co.*, 148 Cal.App.4th 1062, 1076-1078 (2007); Rattan v. United Services auto Assoc, 84 Cal.App.4th 715, 723 (2000); Shade Foods, Inc. v.  Innovative Products Sales & Marketing Inc., 78 Cal.App.4th 847, 916 (2000).

RSUI's contention that it engaged in no misconduct is illustrative of its complete disregard of the obligations it owed to California policyholders.  In fact, the declarations submitted in support of RSUI's motion, swearing that the claims personnel have never been trained that the California Fair Claim Practices Regulations required denials such as the ones sent to California Dairies, to be in writing and to include an explanation of all material facts and policy provisions, evidences the type of "knowingly committed" wrongful conduct to establish a pattern of wrongful conduct under the California Fair Claim Practices Regulations.  10 C.C.R. Section 2695.1 (a) (1) & 2695.2 (1).

Doc. 66 at 6.  Essentially, CDI argues that RSUI's assertion of

Exclusion 7 in this lawsuit, despite its failure to advance

Exclusion 7 in its initial denial letter, constituted misconduct

because it was "inherently unfair" and not in compliance with the

CFCPRs.  CDI further suggests that RSUI had a statutory duty to train its employees in fair claims handling practices and intentionally did not do so to provide it a basis to avoid waiver and to avoid having to notify its insured of all bases for denial of coverage.

This is not the type of "misconduct" contemplated by *Waller*. *Waller* explicitly rejected the argument that failure to advance a basis for denying coverage automatically waived any right to advance that basis in the future.  Instead, *Waller* demanded specific evidence that party against whom waiver is asserted "intentionally relinquishe[d] a right" or acted "so inconsistent[ly] with an intent to enforce the right as to induce a reasonable belief that such right ha[d] been relinquished."  11 Cal. 4th at 33.  Plaintiff's argument that RSUI committed misconduct because it failing to advance all relevant exclusions in its initial denial letter is, in effect, a request to re-instate the automatic waiver rule rejected by *Waller*. Plaintiff's misconduct argument is unsupported by the law or the record.

    2.   <u>Other Evidence of Waiver.</u>

"California courts will find waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished."  *Id*.

26

Here, Plaintiff does not allege that RSUI intentionally

relinquished its right to assert Exclusion 7.  Rather, Plaintiff

alleges that RSUI was aware that the CFCPRs required assertion of

every basis for denying a claim in the first denial letter and

conveyed this awareness to its employees through training:

> 18.  At the time RSUI made its final decision to deny
> coverage it was aware that, with respect to the
> handling and adjustment of claims in the state of
> California, it was obligated to comply with the
> mandatory provisions of the California Fair Claim
> Practices and Settlement Act, 10 C.C.R. §2695.1, et
> seq.

> 19.  Upon information and belief, CALIFORNIA DAIRIES
> alleges that at the time RSUI made its final decision
> to deny coverage, it was aware that the California Fair
> Claims and Settlement Practices Regulations,
> specifically 10 C.C.R. §2695.7(b)(1) required RSUI to
> set forth in writing to CALIFORNIA DAIRIES a statement
> listing all bases for such denial, which would include
> reference to any and all potentially applicable
> coverage provisions of its policy.

> 20.  Upon information and belief, CALIFORNIA DAIRIES
> alleges that at the time RSUI made its final decision
> to deny coverage, it was aware that under 10 C.C.R.
> §2695.6(b), it was required to provide thorough and
> adequate training regarding the California Fair Claims
> and Settlement Practices Regulations to its agents
> involved with the handling and adjustment of claims so
> that they would be fully and completely familiar with
> all provisions of the regulations.

> 21.  Upon information and belief, CALIFORNIA DAIRIES
> alleges that because of the mandatory provisions
> provided by the California Fair Claims and Settlement
> Practices Regulations, RSUI trained its representatives
> involved with the handling and adjusting of claims,
> that the failure to set forth specifically all coverage
> provisions potentially applicable as a basis for
> denying coverage, in the written denial letter mandated
> by the California Insurance Regulations, would and
> could constitute a waiver of RSUI's right to

subsequently assert additional coverage provisions as a
basis to deny coverage.

22.   Upon information and belief, CALIFORNIA DAIRIES
alleges that based on the mandatory provisions of the
California Insurance Regulations, RSUI trained its
representatives involved with the handling and
adjustment of insurance claims, that it would be
inconsistent with RSUI's understanding of the
regulations and RSUI's rights, for RSUI to attempt to
assert a denial of coverage on a basis which RSUI knew
or should have known at the time it issued its final
written denial letter, but which RSUI failed to assert
or identify at the time it issued its final written
denial letter.

23.   At the time RSUI issued its final denial letter it
expressly stated that its decision to deny coverage was
based solely on exclusion 4 of THE POLICY. At no time
prior to the filing of this lawsuit, did RSUI ever make
any reference to exclusion 7 of THE POLICY as a basis
for RSUI to deny coverage.

24.   At the time RSUI issued its final denial letter,
it knew that the claims which were the basis of THE
UNDERLYING ACTION were asserted by plaintiffs who were
insureds under THE POLICY, against RSUI, who was also
an insured under the RSUI policy.

FAC, Doc. 25.

These allegations were the subject of discussion in the

August 11, 2009 Decision:

[I]f RSUI trained its representatives that failure to
include all potentially applicable coverage provisions
in a denial letter could constitute a waiver of RSUI's
right to subsequently assert any omitted bases for
denying coverage, RSUI's failure to include Exclusion 7
in the final denial letter arguably constitutes conduct
"so inconsistent with an intent to enforce" Exclusion 7
so as to "induce a reasonable belief that such right
has been relinquished."

Doc. 36 at 17-18.

RSUI argued that CDI could not have reasonably believed that

28

RSUI intended to relinquish its right to assert Exclusion 7 because the denial letter contains express anti-waiver language, specifically stating that "nothing in this letter nor any action taken by us in connection with this matter should be construed as an admission of coverage or waiver of any right RSUI might have at law or under the policy."  *See* Doc. 26-2, Ex. B, at 3.

The August 11, 2009 decision rejected RSUI's argument, concluding that the existence of conduct "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished," presented a question of fact:

> "Whether there has been a waiver is usually regarded as a question of fact to be determined by the jury...." *Old Republic Ins. Co v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 679 (2000). In deciding whether to grant a motion to dismiss, the court "accept [s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party. *TwoRivers*, 174 F.3d at 991.  RSUI is correct that a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Here, however, it is not unreasonable to infer from the allegations of the FAC that a waiver occurred.  Although the allegations are not particularly robust, as they are on information and belief, the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949.

Doc. 36 at 18.

The issue is now before the court on RSUI's motion for summary judgment.  The undisputed evidence reveals no support for CDI's factual assertions regarding RSUI's awareness of the regulatory consequences of omitting from the initial denial of

coverage a basis for doing so, nor does it reveal any evidence that RSUI employees received training about any such consequences and/or to "set up" a non-waiver by failure to train employees they lacked knowledge of the requirements of describing all grounds of denial of coverage.

Mr. Krajec and his immediate supervisor, Mr. Paul Rowe, both declare that RSUI did <u>not</u> have a policy to train its claim handlers that the failure to set forth specifically all coverage provisions potentially applicable as a basis for denying coverage in the written denial letter mandated by the CDCPRs would constitute a waiver of RSUI's right to subsequently assert additional coverage provisions.  DSUF #20.  This addresses only part of RSUI's allegation, because the intentional absence of knowledge to prevent a knowing waiver would be the type of conduct from which the insurer should not profit.

CDI cites portions of Mr. Rowe's and Mr. Krajec's depositions to support the proposition that RSUI "was aware that the failure to set forth all policy provisions in its denial letters, when it knew or should have known they [were] applicable to preclude coverage, would be inconsistent with its training and what it understood was required [by] RSUI to properly and fairly handle claims submitted by its policyholders."  PSUF #8.  The deposition testimony cited by CDI only states that Mr. Rowe and Mr. Krajec endeavor to treat insureds fairly and attempt to be

thorough when issuing disclaimers of coverage.  *See* Rowe Depo.
25:16-26.23, 28:9-30:24, 31:2-32:9; Krajec Depo. 15:4-16:7,
39:14-41:9, 46:23-47:19, 49:8-21, 50:11-52:1, 57:3-23.
At no time did Mr. Krajec or Mr. Rowe ever state that the failure
to cite to a specific provision would be inconsistent with any
training they received from RSUI.  Mr. Krajec did state that it
would be inappropriate to conceal information from a
policyholder, *see* Krajec Depo, 50:11-52:1, but this does not
constitute an admission that failure to assert a ground for
denying coverage in the initial denial letter would amount to
waiver of the right to assert that ground at a later time.

Nor is it enough that Mr. Krajec, who is an attorney,
testified that he is aware of the doctrine of waiver.  *See* Krajec
Depo. 52:21-54:10l; Krajec Decl. ¶2.  This testimony does not
indicate that RSUI was either aware or trained its employees that
failing to assert a policy provision in the first denial could or
would result in waiver, nor does it even arguably demonstrate
that RSUI deliberately failed to train their employees about the
potential consequences of failing to assert policy provisions so
as to avoid a knowing waiver.

Both Mr. Rowe and Mr. Krajec declared that they believed the
*Gonzalez* lawsuit was a "third party claim" for purposes of the
CFCPRs.  (In contrast to "first party claims," for which the
CFCPRs require denial letters to forth all potentially applicable

31

policy provisions, there is no such regulatory requirement for

third party claims.)   CDI argues that this assertion renders Mr.

Rowe's and Mr. Krajec's testimony "inherently unbelievable,"

because they admitted receiving yearly training on the CFCPRs.

CDI overreaches.   The terms "first party claim" and "third party

claim" are undefined in the regulation and their interpretation

and application are debatable and sometimes obscure.   That Mr.

Rowe and Mr. Krajec interpreted these terms differently from the

Court does not render their testimony "unbelievable."

CDI presents no evidence that RSUI specifically trained its

employees that failure to assert a basis for denying coverage in

an initial denial letter might constitute waiver of the right to

assert that basis in the future.   Nor has CDI presented any other

evidence suggesting that RSUI acted "so inconsistent[ly] with an

intent to enforce [Exclusion 7] as to induce a reasonable belief

that such right has been relinquished."   Because CDI's theory of

waiver is unsupported by any testimony or other record evidence,

RSUI is entitled to summary judgment that Exclusion 7 bars

coverage in this lawsuit.

It is not necessary to address RSUI's alternative arguments

regarding the application of Exclusions 5 and 6, which present

several questions of first impression regarding the

interpretation of Policy provisions under California law.

Exclusion 7 is effective and sufficient to bar coverage in this

1   case.

2

3                          V. <u>CONCLUSION.</u>

4        For the reasons set forth above, Defendant's motion for

5   summary judgment is GRANTED as to all remaining claims in this

6   case.  Defendant shall submit a form of judgment consistent with

7   this memorandum decision within five (5) days following

8   electronic service.

9

10

11  SO ORDERED
    Dated: June 25, 2010
12                              <u>/s/ Oliver W. Wanger</u>
                                  Oliver W. Wanger
13                            United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                33